686 P.2d 835

The BUNKER HILL COMPANY, a corporation, Plaintiff-Respondent,

v.

UNITED STEELWORKERS OF AMERICA and Its Local 7854, Defendants-Appellants.

No. 14945.

Supreme Court of Idaho.

July 5, 1984.

Rehearing Denied Sept. 12, 1984.

Wayne P. Fuller, Caldwell, for defendants-appellants.

William F. Boyd, Kellogg, for plaintiff-respondent.

HUNTLEY, Justice.

On August 25, 1981, the Bunker Hill Company announced that it was ceasing its mining operations in the Kellogg area. Initially, employees were merely laid-off, as the company was making an effort to sell the mine as a going concern. It eventually became clear however, that the mine would not be sold, and by July, 1982, almost the entire work force had been terminated.

Bunker Hill and the Union were at that time parties to a labor-management contract which was not due to expire for another year, and after the announced shutdown, the Union demanded to bargain

about the effects of the mine closure upon the rights of the employees. The issues involved concerned the amount of pension benefits, severance pay, and the company's obligation to continue medical and other insurance benefits. Before an agreement was reached however, three Union members filed a class action suit against Bunker Hill in United States District Court for the District of Idaho. At issue in that suit, *Chilson v. The Bunker Hill Company*, 722 F.2d 744 (9th Cir.1983) was, inter alia, the validity of the method of the company's termination of the employees. The three plaintiff union members were represented by Daniel McIntyre, Assistant General Counsel of the United Steelworkers, and Wayne Fuller, counsel for the Union in this case.

On July 14, 1982, shortly after the Chilson suit was brought, Bunker Hill and the Union reached an agreement in their negotiations, which was formalized on July 22nd. One of its provisions consisted of a promise by the Union that it would "withdraw the grievance over the termination." The only grievance pending then, as well as now, was the Chilson lawsuit. The Union admits that it represented in negotiations that it would seek dismissal of the federal suit. According to Daniel McIntyre:

> At the July 14th meeting, as the parties neared the end of their bargaining, Mr. Boyd [attorney for Bunker Hill] asked me whether I would agree to withdraw the participant's action against Bunker Hill if the Company agreed to the settlement which was being considered. I responded that I was willing to move for dismissal and noted that, since the action was a class action, the district court had to determine the appropriateness of the dismissal. Mr. Boyd said that was acceptable. Affidavit of Daniel P. McIntyre, at 3–4, Clerk's Record at 53–54.

On the same day the agreement was formalized, Jack Kendrick, Bunker Hill's president, wrote to the Union representative, William Thompson, stating that the agreement was signed with the understanding that it would have the effect of "resolving all pending grievances, unfair labor charges and employee lawsuits." Thompson responded by affirming the settlement and stating that the lawsuit was "to be resolved between the attorneys." The Union attorneys subsequently refused to move to dismiss the Chilson suit, and Bunker Hill consequently refused to implement the terms of the settlement agreement.

Bunker Hill did however, express a desire to submit the settlement agreement to each individual employee. The Union agreed not to charge the company with direct dealing, and a letter was sent to each employee on September 7, 1982. The letter briefly outlined the circumstances of the dispute and provided each employee a copy of the settlement agreement and the exchange of letters between Kendrick and Thompson. The company implemented the settlement agreement as to all employees who accepted the proposal, but continued to refuse to otherwise implement it. All but twenty employees accepted the agreement.

Bunker Hill then instituted this lawsuit for declaratory judgment, specific performance, and breach of contract and damages. Specific performance of the settlement agreement is sought to compel the Union to move for dismissal of the Chilson suit. In its counterclaim, the Union also sues for specific performance; however, its view of the settlement agreement is that dismissal of the federal lawsuit is not a condition thereof.

Both parties moved for summary judgment. The district court denied USWA's motion and dismissed its counterclaim with prejudice, and granted Bunker Hill's motion in part. In granting Bunker Hill's motion, the court (1) ordered the Union to move for dismissal of the Chilson case, and (2) ruled that until and unless the Chilson suit were dismissed, Bunker Hill would have no duty to perform under the settlement agreement. The judgment of the court is affirmed, except for that part of

the order directing the Union attorneys to move for dismissal of the federal court action, which is reversed.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Idaho R.Civ.P. 56(c). In evaluating the record on appeal from a summary judgment, the facts, and the inferences to be drawn from the facts, are to be construed in the light most favorable to the party opposing the motion. *Mitchell v. Siqueiros,* 99 Idaho 396, 398, 582 P.2d 1074 (1978).

The trial court correctly ruled that there exist no genuine issues of material fact. Although the Union now attempts to assert that there is a question of fact as to whether it agreed to move to dismiss the federal lawsuit as part of the negotiations and subsequent agreement, that assertion is not persuasive in light of the wording of the settlement agreement and in light of its admission in the McIntyre affidavit that the Union would move to dismiss.

The court was also correct in ruling that Bunker Hill was entitled to judgment as a matter of law. The refusal of the Union to perform one of its promises under the contract excuses Bunker Hill from performance.

However, that part of the judgment ordering the Union's attorneys in this suit to move to dismiss the federal suit must be reversed. The state district court had no jurisdiction over the named plaintiffs in the federal action and the union was not a party to that action, and thus the state district court had no power to order dismissal thereof.

Judgment affirmed in part and reversed in part. No costs and no attorneys fees.

DONALDSON, C.J., BAKES and BISTLINE, JJ. and McFADDEN, J. Pro tem, concur.