946 P.2d 1333

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Respondent,

v.

John DOE and Jane Doe, husband and wife, individually and as parents of John Doe I, and John Doe I, a minor, Defendants–Appellants,

and

John Roe and Jane Roe, husband and wife, and as natural parents of and guardian ad litem of Jane Roe I, Intervenors–Appellants.

No. 22010.

Supreme Court of Idaho, Boise, March 1996 Term.

Sept. 8, 1997.

Rehearing Denied Dec. 2, 1997.

Seiniger Law Offices; Bruce S. Bistline, Boise, for appellants. W. Breck Seiniger and Bruce S. Bistline argued.

Elam & Burke, P.A., Boise, for respondent. Bobbi K. Dominick argued.

Substitute Opinion

The Court's Prior Opinion Dated January 3, 1997, is Hereby Withdrawn.

SCHROEDER, Justice.

This is an appeal from a declaratory judgment issued by the district court holding that applicable insurance policies do not provide coverage for injuries sustained by a minor child as a result of sexual contact with a minor child of the insured. Jane and John Roe, individually and as guardian ad litem for their minor child, appeal the district court's declaratory judgment, asserting that this conduct is not excluded from coverage by the insurance policies.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

John and Jane Doe operated a day care business in their residence in Boise from

1973 through August 1991. The facility operated under both city and state licenses authorizing care for up to twelve (12) children per day. The three year-old daughter of Jane and John Roe attended the day care from March 1988 to July 1991. She was never at the residence other than as a client of the day care.

The Does' thirteen year-old son helped out at the day care. He acknowledged that sexual conduct with the Roes' daughter occurred in the downstairs bathroom of the facility between late 1990 and July 1991. The Does' son told the Roes' daughter that a "green monster" would get her if she told anyone. In July 1991 she told her mother what had happened to her at the day care. State Farm Fire and Casualty Company (State Farm) insured the Does under succeeding homeowners and umbrella insurance policies. Homeowners Policy No. 12-15-0041-8 ("Homeowners I") ran from April 11, 1989, through April 10, 1990. It was renewed for an additional year from April 11, 1990, through April 10, 1991. It was renewed in amended form ("Homeowners II") for a third year from April 11, 1991, through April 10, 1992. State Farm also provided the Does with liability umbrella coverage under Policy No. 12-27-1823-3 from June 12, 1989 through June 11, 1992.

The Roes brought suit against the Does alleging the legal theories of assault, breach of contract, negligent entrustment, negligent supervision, negligent misrepresentation, negligent failure to notify a business invitee of a dangerous condition, failure to report child abuse under section 16-1619 of the Idaho Code and civil claims for commission of a criminal act of lewd conduct, sexual abuse, sexual exploitation, or injury to a child (I.C. Section 6-1701). State Farm provided a defense for this action under a reservation of rights. The Roes' action was grounded on the sexual abuse of their daughter and the alleged accompanying failure of John and Jane Doe to identify and to prevent their son's conduct.

State Farm brought this declaratory judgment action seeking a determination that the sexual abuse is outside its policy coverage, asserting that the policies do not obligate it to defend or indemnify the Does against the allegations and claims in the Roes' action. The Roes petitioned to intervene in the action, alleging that the Does did not have sufficient assets to cover the cost of defense or pay any judgment.

The district court granted summary judgment for State Farm, relying on *Mutual of Enumclaw v. Wilcox*, 123 Idaho 4, 843 P.2d 154 (1992). The district court held that the sexual abuse was not an "accident" or "occurrence" under the policy. The court cited *Wilcox* for the legal definition of "accident" as it is used in insurance policies:

An accident within accident insurance policies is an event happening without any human agency, or if happening through such an agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens. A more comprehensive term than "negligence", and in its common signification the word means an unexpected happening without intention or design.

n. 1. an undesirable or unfortunate happening, unintentionally caused and usually resulting in harm, injury, damage, or loss; casualty; mishap; automobile accidents. 2. An event that happens unexpectedly, without a deliberate plan or cause . . .

Memorandum and Order Granting Amended Motion for Summary Judgment (citing *Wilcox*, 123 Idaho at 9, 843 P.2d at 159 (1992) (citations omitted)). The district court referred to the conduct as "intentional acts of sexual abuse" and analogous to the conduct of Mr. Wilcox in *Wilcox*.

The district court also held, on alternative grounds, that the defense and indemnification of the Does were excluded under the Business Pursuits Exclusion of the homeowners policies, the Business Operations Exclusion of the umbrella policy and the Child Care Services Exclusion applicable to all the policies.

## II.

### STANDARD OF REVIEW

Summary judgment is appropriate if motions are based on the same evidentiary facts

and on the same theories and issues, when parties effectively stipulate that there is no genuine issue of material fact. I.R.C.P. 56(c); *Morrissey v. Haley*, 124 Idaho 870, 865 P.2d 961 (1993). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bunker Hill Co. v. United Steelworkers of America*, 107 Idaho 155, 686 P.2d 835 (1984). A motion for summary judgment must be denied if reasonable people could reach differing conclusions or draw conflicting inferences from the record of the case. *Cates v. Albertson's Inc.*, 126 Idaho 1030, 895 P.2d 1223 (1995). Upon motion for summary judgment, all facts and inferences must be drawn in favor of the nonmoving party. *Perkins v. Highland Enters., Inc.*, 120 Idaho 511, 817 P.2d 177 (1991).

When questions of law are presented, this Court exercises free review and is not bound by findings of the district court, but is free to draw its own conclusions from the evidence presented. *Automobile Club Ins. Co. v. Jackson*, 124 Idaho 874, 876, 865 P.2d 965, 967 (1993).

## III.

### THE CONDUCT AT ISSUE DID NOT CONSTITUTE AN "OCCURRENCE" THAT WOULD CREATE LIABILITY UNDER THE POLICIES.

Under the coverage provision of the State Farm homeowner policy there is liability coverage for an insured when a claim is made or suit is brought against an insured based on an "occurrence."[1] The policy defines an "occurrence" as an accident, including exposure to conditions, which result in bodily injury or property damage.[2] Under the umbrella liability policy, coverage is provided if the insured is legally obligated to pay damages for a "loss."[3] The policy defines "loss" as an accident that results in personal injury or property damage.[4] Each policy limits liability coverage to "accidents;" however, the policies do not set forth definitions for "accident."

■ Whether an insured acted wilfully, intentionally or maliciously, relieving the insurer of liability under the policy, is a factual determination. *Farmers Ins. Group v. Sessions*, 100 Idaho 914, 607 P.2d 422 (1980). The absence of such a determination precludes summary judgment for the insurer. *Id.* In this case the district court found that the conduct in issue constituted "intentional acts of sexual abuse" and was not an "accident" or "occurrence" under the applicable policies.

■ This Court defined "accident" in *Wilcox*, noting that, "[w]here a word or phrase used in an insurance contract has a settled legal meaning or interpretation, that meaning or interpretation must be given even though other interpretations are possible." 123 Idaho at 8, 843 P.2d at 158 (1992) (quoting *Stein–McMurray Ins. Inc. v. Highlands Ins. Co.*, 95 Idaho 818, 820, 520 P.2d 865, 867

1. **COVERAGE L—PERSONAL LIABILITY**
   If a claim is made or a suit is brought against an insured for damage because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
      1. pay up to our limit of liability for the damages for which the insured is legally liable; and
      2. provide a defense at our expense by counsel of our choice.
   Policy No. 12–15–0041–8 (emphasis omitted).

2. 7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
      a. bodily injury; or
      b. property damage

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.
Policy No. 12–15–0041–8

3. 1. Coverage L—Personal liability. If you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit. Our payment will not exceed the amount shown on the Declarations as Policy Limits—Coverage L—Personal Liability.
   Policy No. 12–27–1823–3

4. 6. "loss" means an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.
   Polity No. 12–27–1823–3

(1974)); *see also City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). Insurance policies may contain words that have settled legal meanings or interpretations and are not ambiguous merely because the policy does not contain a definition. *Id.* at 8, 843 P.2d at 158.

The *Wilcox* Court referred to the following two definitions of "accident" as the "settled legal meaning or interpretation:"

Accident.

*Insurance contract.* An accident within accident insurance policies is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens. A more comprehensive term than "negligence," and in its common signification the word means an unexpected happening without intention or design.

. . . .

... 1. an undesirable or unfortunate happening, unintentionally caused and usually resulting in harm, injury, damage, or loss; casualty; mishap: automobile accidents. 2. any event that happens unexpectedly, without a deliberate plan or cause . . . .

123 Idaho at 9, 843 P.2d at 159 (citations omitted). Ms. Wilcox's failure to report or warn the proper authorities of the child molestation perpetrated upon minors by her ex-husband was "not an 'occurrence' under the policies because it was not the conduct which caused injury." *Id.*

The facts in this case clearly show that the abuser understood the sexual nature of his conduct as well as its wrongfulness. He threatened the child by telling her that a "green monster" would get her if she told anyone of his behavior. The conduct occurred in the downstairs bathroom of the residence in a location where his conduct would not easily be detected. The Does' son's conduct was not "without intention or design." *Wilcox,* 123 Idaho at 9, 843 P.2d at 159. An accident is an unexpected event which is the result of unintentional conduct or an intentional act which results in unex-

pected consequences. The district court found the facts established "intentional acts of sexual abuse." There is no other reasonable interpretation of the facts. This intentional conduct, with consequences that could be expected, cannot be characterized as an accident. Therefore, there was no "occurrence" within the meaning of the policy.

The policies in question do not afford coverage because there was no "occurrence." It is unnecessary to consider the Business Pursuits Exclusion of the homeowners policies, the Business Operations Exclusion of the umbrella policy and the Child Care Services Exclusion applicable to all of the policies.

## IV.

## CONCLUSION

The district court's grant of summary judgment is affirmed. Costs on appeal are awarded to State Farm. No Attorney fees are awarded on appeal.

McDEVITT, C.J.,* JOHNSON and TROUT, JJ., and WOOD, J. Pro Tem., concur.

## ADDENDUM ON DENIAL OF REHEARING

This case is before us on a second petition for rehearing submitted by the Appellants. The Appellants assert that there is evidence in the record that creates a genuine issue of material fact as to whether the Does' son's conduct was an "accident" so as to be a covered "occurrence" under the policy. Specifically, counsel for the Appellants points to testimony of a psychologist and of Detective Steiner. For the reasons stated below, this Court does not find that this evidence establishes a genuine issue of fact as to the nature of the Does' son's conduct.

### A. *Testimony of Psychologist:*

Kerry Lindorfer, a psychologist, testified by affidavit for the Appellants. Regardless of the assertion made in her affidavit that "[c]hildren under 14 may not have developed the ability to understand that their actions,

* Justice McDevitt participated in this decision pri-    or to his resignation.

especially those of a sexual nature, are criminal, inappropriate, and potentially harmful to the victim." Lindorfer does not state an independent, personal evaluation of John Doe I. In fact, she concluded by stating:

I understand that I have been asked to give this affidavit in association with pending litigation and that this affidavit may be filed in that litigation. I understand that the litigation involves an offender, age 13, and a victim, age 3. Other than this I have not reviewed any factual material pertaining to the case or been advised of any other factual material pertaining to the case. The information provided in this affidavit is intended to be general information about juvenile sex offenders and not particular information about any person.

### B. *Testimony of Officer:*

In the deposition of Detective Steiner, the following question was asked:

Q: Did you ever gain the impression at all that [John Doe I] had in any way intended to hurt [Jane Roe I]?

A: No.

The petition for rehearing asserts that this establishes that John Doe I's conduct was accidental.

Other testimony in Detective Steiner's deposition amplifies the results of his investigation:

Q: Detective Steiner, my name is Nick Crawford. I represent [John and Jane Doe]. Did you ultimately come to the conclusion, based upon your investigation, that [John Doe I] had touched [Jane Roe I] in the genital area?

A: Yes.

Q: Based upon that investigation, you referred and recommended the filing of a petition?

A: Yes.

Q: What exactly does that mean?

A: That means a petition has to be filed through juvenile court for a juvenile court proceeding, and he then has a chance to admit or deny the allegations or the charges. And if he admits it, then they go ahead and make disposition

on it. If he denies it, then it is set for hearing.

Q: *So by recommending a petition be filed, you are referring and recommending that a juvenile proceeding take place?*

A: Yes.

Q: You are referring and recommending that juvenile prosecution take place?

A: Yes.

Q: *So based upon your investigation, you came to the conclusion that an offense had taken place?*

A: Yes.

Q: *It was your conclusion that this was not an accidental—these were not accidental acts by [John Doe I]?*

A: Yes.

. . .

Q: *Do you feel qualified, based on that training, to say whether or not in this particular situation the touching might have started out accidental and then gone to another level?*

MR. CRAWFORD: Objection; foundation.

MR. ANDERSON: Join.

MR. SEINIGER: That's what the question goes to, is to his qualifications.

BY MR. BISTLINE:

Q: You can answer.

A: Okay.

Q: You are done bickering.

A: *I think in this particular case, I think that's a possibility and it is based on the statements he made about curiosity because of the magazines, pornographic magazines he was interested in. He is 14 years old, hormones have kicked in, and he is curious as to what a girl looks like. So if he has got a chance to look, he is going to.*

Q: How much of your work involves with investigations of juvenile perpetrators?

A: Over the past about three years, we have handled all the cases whether it was juvenile or adult offenders. It's been in the last year that the school resource officer handles juvenile offenders. Probably over the past ten years I have worked with juveniles, all of the

sexual abuse cases worked with juvenile offenders.

Q: Based on your experience with juveniles how would you characterize [John Doe I] with respect to whether there was any maliciousness in his actions?

A: I would characterize [John Doe I] as being more curious—

MR. ANDERSON: I need to introduce an objection here on the basis of speculation. Go ahead and finish. I am sorry.

THE WITNESS: —more curious than malicious, that it was a malicious intent. It is possible, too, that someone at this age develop into, that age child, being a sexual preference is what I see that could happen if he stays with that interest in the opposite sex of that age group.

MR. BISTLINE:

Q: But it wasn't your sense that that orientation had occurred yet?

A: Right.

(emphasis added.)

  In reviewing the Appellant's opening brief, the argument is premised upon the idea that John Doe I did not intend harm. The argument is not that he unintentionally took her clothes off in a bathroom away from public view, touched her in the genital area and then told her a green monster would get her if she told anybody. The conduct was sexually motivated and was intentional. It is clear that he understood he should not do this in light of concealment and the threat to the girl. He may not have anticipated the full extent of the problems his conduct would cause the girl, but it is clear that he knew it was wrong and that adverse consequences would follow. This Court concludes that the record is subject to only one interpretation— that the conduct was not accidental as we have defined that term. As indicated, the record, read in its entirety, supports this conclusion.

The petition for rehearing is denied.

* Justice McDevitt participated in this decision pri-

TROUT, C.J., JOHNSON and McDEVITT *, JJ., and WOOD, J. Pro Tem., concur.