No. 76,192

ALBERTA BRUMLEY, *et al. Appellants*, v. DAVID WAYNE LEE, *Defendant/Third-party Plaintiff*, v. SAFECO INSURANCE COMPANY OF AMERICA, *Third-Party Defendant/Appellee.*
(963 P.2d 1224)

Opinion filed July 17, 1998.

*J. Eugene Balloun*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, argued the cause, and *Scott C. Nehrbass*, of the same firm, was with him on the briefs for appellant.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Arlen L. Tanner*, of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

ABBOTT, J.: This appeal concerns a homeowner's insurance policy and comes before the court upon rehearing. Pursuant to an order issued April 10, 1998, we withdrew our previous opinion and granted a rehearing to examine further the full scope of our decision.

This is an appeal from summary judgment in favor of third-party defendant Safeco Insurance Company of America (Safeco). The Court of Appeals found no liability coverage under the Safeco policy issued to David Wayne Lee and his wife Kimberlee for David's alleged negligence concerning Kimberlee's murder of Douglas Brumley. Douglas was the adopted child of plaintiffs Delmar and Alberta Brumley (Brumleys). The Court of Appeals concluded that the death was not an "occurrence" as defined in the policy. The Brumleys petitioned for review.

Safeco cross-petitioned for review on the Court of Appeals' reversal of the district court's ruling that the exclusion for bodily injury "expected or intended by any insured" precluded coverage. The Court of Appeals decided that *Catholic Diocese of Dodge City v. Raymer*, 16 Kan. App. 2d 488, 825 P.2d 1144, *aff'd* 251 Kan. 689, 840 P.2d 456 (1992), controlled. We exercised our jurisdiction

under K.S.A. 20-3018(b) by granting both the petition and cross-petition for review.

We reverse summary judgment for Safeco. We decline to address Safeco's assertion that Douglas Brumley was an "insured" within the meaning of the policy. Safeco failed to appeal the district court's denial of summary judgment on that issue.

## FACTS

In 1992, there were difficulties with some children in the Brumley household. Kimberlee, the Brumleys' daughter, and David Lee agreed to house and care for Douglas, age 4, until the problems were resolved. Both Kimberlee and David abused Douglas when he was in their care. Kimberlee struck Douglas in the abdomen. He died 2 days later. Both Kimberlee and David were convicted of crimes relating to the abuse and death of Douglas.

The Brumleys allege that David negligently caused or contributed to the death of Douglas. The petition seeks damages for wrongful death and for Douglas' pain and suffering. David filed a third-party petition against Safeco, alleging that Safeco, as liability insurer of the Lees' home, should indemnify him. Safeco denied liability under its policy. The Brumleys and Safeco stipulated that if the court decided that the policy provided coverage, then Safeco would pay the Brumleys the policy limits of $100,000. The claims against David were dismissed, and the case continued as a declaratory judgment action on the coverage issue.

Safeco filed two summary judgment motions, arguing no coverage existed because: (1) Douglas resided with the Lees and was an "insured" under the policy; and (2) the acts complained of were not a covered "occurrence" in the policy or, alternatively, the acts causing the bodily injury were intentionally inflicted by "any insured." The district court denied Safeco's first summary judgment motion, finding material issues of fact existed as to whether Douglas was an "insured." The second motion was granted on the alternative grounds.

We construe an insurance policy in a way that will give effect to the intention of the parties. If the language is ambiguous, the construction most favorable to the insured must prevail. If the policy

is not ambiguous, we do not remake the contract; we enforce the contract as made. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987).

Our test for ambiguity was described in *Raymer*, 251 Kan. at 693:

"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. [Citation omitted.]"

There are three policy provisions involved in this case: (1) the severability clause, (2) the intentional act clause, and (3) the occurrence or accident clause.

We turn now to the relevant severability policy provisions. Under "Section II—Exclusions" the Safeco policy provides:

"Coverage E—Personal Liability . . . do[es] not apply to bodily injury or property damage:
a. which is expected or intended by *any* insured." (Emphasis added.)

Under "Section II—Conditions" the policy provides:

"Severability of Insurance. *This insurance applies separately to each insured.* This condition shall not increase our limit of liability for any one occurrence." (Emphasis added.)

The Brumleys rely on two cardinal rules of contract construction as support for their arguments that the severability clause renders ambiguous the application of the intentional act exclusion and the "occurrence" definition in this case: (1) that all pertinent provisions of an insurance policy must be considered together, rather than in isolation, and given effect; and (2) that the test for ambiguity in an insurance policy is what a reasonably prudent insured would understand the language to mean, not what the insurer intends the language to mean. *E.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995); *Associated Wholesale Grocers, Inc. v. Americold Corp*, 261 Kan. 806, Syl. ¶ 2, 934 P.2d 65 (1997). "Where the terms of a policy are ambiguous or uncertain, conflicting, or susceptible of more than

one construction, the construction most favorable to the insured must prevail." 240 Kan. at 713. "[T]he drafter must suffer the consequences of not making the terms clear." *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 36, 744 P.2d 840 (1987).

Historically, we start with *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), which held that one looks to the underlying theory of liability alleged to determine whether there was coverage. *Noel* was followed by *Rose Constr. Co. v. Gravatt*, 231 Kan. 196, Syl. ¶ 1, 642 P.2d 569 (1982), wherein Justice, now Chief Justice, McFarland, speaking for a unanimous court, held: "An automobile insurance policy containing exclusionary and severability of interests clauses is construed to require that the exclusions are to be applied only against the insured for whom coverage is sought" and "that coverage as to each insured must be determined separately based on the facts applicable to each insured." 231 Kan. at 198.

Dicta in the *Rose* case would suggest that the use of "any insured" in the clause instead of "each insured" would have led to a different result. That dicta does not escape Safeco's attention. The majority does not feel bound by that dicta, and whether "any insured" would have led to a different result was not an issue before the court.

Next came the case of *Catholic Diocese of Dodge City v. Raymer*, 16 Kan. App. 2d 488, affirmed by this court in a separate opinion, 251 Kan. 689. In *Raymer*, a teenager who was an insured under his parents' homeowner's policy vandalized a school. The teenager's acts were intentional, and the policy had an exclusion clause that barred coverage for damages " 'caused intentionally by . . . an insured.' " 16 Kan. App. 2d at 490. Coverage was sought under the homeowner's policy for an action brought against the parents for the negligent supervision of the child. Both the Court of Appeals and this court ruled that in fact there was coverage in *Raymer*. A majority of this court is of the opinion *Raymer* controls the case before us.

The words "an" and "any" are inherently indefinite and ambiguous. The two words can and often do have the same meaning. The Random House Dictionary of the English Language 68 (1973)

gives many definitions for the word "any." The first definition listed is "one, a, an, or some." Correspondingly, the Random House Dictionary includes the word "any" among its definitions for the word "a" or "an." Hence, the words may have the same meaning. Thus, the word "any" is not materially different from the word "a" or "an," and, contrary to the district court's ruling, Safeco's use of "any" instead of "an" in its policy does not eliminate the ambiguity created by the policy's severability clause.

With the severability clause each insured, in effect, has his or her own insurance policy. When looked at in that light, the ambiguity is easier to see. There are a number of insureds (in essence separate policies—one for each insured) in most instances because homeowner's policies define insureds as residents of the household. Thus, if residents of a household include two parents and two teenage sons, there are four insureds. If the two teenagers vandalize a building and the parents are sued for negligence, the exclusions are applied only against the insureds for whom coverage is sought. Here, the insurance company added one letter—a "y"— to a single word in the insurance policy and thus claims a purchaser of that policy should realize that he or she has no coverage for a negligent act if the claim is a result of the intentional act of an insured other than the insured who the injured party claims to be negligent, such as one who is alleged to be negligent in supervising a minor or someone who is mentally ill or senile. We do not believe adding one letter—a "y"—to "an" eliminates the ambiguity we recognized in *Raymer*.

We acknowledge a line of cases contrary to this holding. However, we believe the policy to be ambiguous and refer those who are interested to the Random House Dictionary of the English Language: *Transport Indem. Co. v. Wyatt*, 417 So. 2d 568 (Ala. 1982); *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. Dist. App. 1994); and *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158 (1986).

## OCCURRENCE

In its unpublished opinion, the Court of Appeals affirmed the trial court's summary judgment in favor of Safeco and against the

Brumleys on the basis that the act causing injury was not an accident and there was no coverage because there was no "occurrence," which the policy defined as an accident. We hold the Court of Appeals erred in that holding. We use the same standards of review set forth in the preceding section of this opinion.

## Relevant Policy Provisions

The "Definitions" section of the Safeco policy provides:

" 'occurrence' means an accident, including exposure to conditions which results, during the policy period, in bodily injury or property damage."

The term "accident" is not defined in the policy. Under "Section II—Liability Coverages" the policy provides:

"If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable."

Under "Section II—Exclusions" the policy provides:

"Coverage E—Personal Liability . . . do[es] not apply to bodily injury or property damage:
a. which is expected or intended by any insured."

Under "Section II—Conditions" the policy provides:

"Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence."

The term "occurrence" defines coverage under the policy. The burden is on the insured to demonstrate that the loss falls within the scope of the policy. *Harris v. Richards*, 254 Kan. 549, 553, 867 P.2d 325 (1994). Safeco argues that the definition of the term "accident" quoted in *Harris*, 254 Kan. at 553, and taken from an early case, should apply:

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." (Quoting *Gilliland v. Cement Co.*, 104 Kan. 771, 773, 180 Pac. 793 [1919].)

In *Harris*, this court affirmed summary judgment for the insurer, finding that Harris' injury was not a covered occurrence and the intentional act exclusion applied to bar coverage. Harris was injured by a shotgun blast fired by the insured, Douglas Hawley, into the back window of a pickup truck as Harris sat in the truck with the insured's ex-wife. The insured killed himself and his ex-wife in the encounter. As in this case, the liability policy covered injuries resulting from an occurrence, defined as an accident. The policy also contained an exclusion for injury "expected or intended by an insured." 254 Kan. at 554. Harris argued that his injury was an accident because the insured intended to kill his ex-wife when he fired into the back window of the truck. This court stated:

> "We believe that the question of coverage relates to Douglas as the insured rather than to Harris, the victim. We agree with the learned trial judge's observations:
> 'It would seem to me that where one fires a shotgun twice through the back of a pickup truck, knowing that some person is in the truck, but not being able to see who it is because of darkness, the injury caused to a person in the truck though claimed to be unintended, is not an accident.' " 254 Kan. at 554.

Harris also argued that the intentional injury exclusion should not apply because his injuries were not the natural and probable consequences of the insured's intended acts. This court disagreed.

*Harris* is distinguishable, because only the insured who caused the injury was involved in that case, and no severability clause was at issue. The court did not need to decide from whose standpoint the injuring event should be viewed in determining whether the injury resulted from an accident.

The Brumleys contend that the severability clause in the policy makes the term "occurrence" ambiguous, in that the policy does not provide from whose perspective the injuring event is to be judged. Safeco responds that the severability clause does not apply to the "occurrence" definition or make it ambiguous because the "occurrence" definition is a coverage provision, not an exclusion. The parties agree that both David and Kimberlee are "insureds" under the policy. The parties also agree that Kimberlee's fatal blow to Douglas' abdominal area, tearing the mesentery and resulting in peritonitis and death, was intentional.

Accident Cases

Neither party has identified a Kansas case dealing with the question of whether a severability clause makes the defined term "occurrence" or the undefined term "accident" in a liability policy ambiguous when liability is sought against a co-insured for injuries intentionally caused by another co-insured. Safeco cites the following cases from other jurisdictions in which liability coverage was denied because the injury was not the result of an accident: *Allstate Insurance Company v. Grayes*, 216 Ga. App. 419, 454 S.E.2d 616 (1995); *Mutual of Enumclaw v. Wilcox*, 123 Idaho 4, 843 P.2d 154 (1992); *State Farm Fire and Casualty Co. v. Doe*, 130 Idaho 693, 946 P.2d 1333 (1997); and *MBPIA v. Wasarovich*, 214 Mich. App. 319, 542 N.W.2d 367 (1995).

In *Grayes*, as a result of an ongoing dispute between two couples who were next-door neighbors, Mr. Middleton shot Mr. and Mrs. Grayes with a shotgun. Mrs. Middleton was not present at the time of the shooting. The Grayes sued the Middletons for their injuries, alleging that Mr. Middleton's actions were intentional and Mrs. Middleton provoked a series of incidents that led to the shooting. The Middletons sought liability coverage under their homeowner's policy. The insurer moved for summary judgment, arguing that because the injuries were not the result of an accident, there was no coverage. Also, the intentional injury exclusion barred coverage as to Mr. Middleton's conduct, and Mrs. Middleton's conduct did not cause the injuries. The Grayes then changed the theory of their case, arguing that Mr. Middleton negligently shot them in self-defense. The insurer withdrew its reliance on the intentional injury exclusion, but continued to argue that the injuries were not the result of an accident. After the trial court denied summary judgment, the insurer appealed and the Georgia Court of Appeals reversed, determining that the injuries were not the result of an accident, and no acts by Mrs. Middleton caused any of the injuries. 216 Ga. App. at 421.

*Grayes* is similar to *Harris* but distinguishable because the discussion of whether the injuries resulted from an accident focused on Mr. Middleton's conduct and his liability—not Mrs. Middle-

ton's. She had no liability because there was no causation between her conduct and the shooting. The Grayes' theory was that Mrs. Middleton had provoked the incidents that led up to the shooting. The court found lack of causation in that theory. Here, the Brumleys allege that David Lee negligently failed to protect Douglas from Kimberlee, knowing that Kimberlee was physically abusive to Douglas. The *Grayes* court did not analyze the accident question with respect to Mrs. Middleton's conduct. If the accident analysis as to Mr. Middleton's conduct would have also addressed Mrs. Middleton's liability, there would have been no need to discuss the causation issue as to her conduct. There is no discussion in the opinion of any severability clause.

In *Wasarovich*, Joseph Wasarovich confronted his ex-wife Patricia in her home with her male roommate, August Feldt. Joseph killed Feldt, wounded his wife, and killed himself. Feldt's estate sought recovery against Patricia for negligently failing to protect him from her ex-husband. Patricia sought liability coverage under her homeowner's policy (Joseph and Patricia both being co-insureds). In a declaratory judgment action, the insurer moved for summary judgment on the coverage issue, arguing that Feldt's murder was not a covered "occurrence" (defined in the policy as an accident) and, alternatively, that the intentional injury exclusion applied. No severability clause is mentioned. The Court of Appeals of Michigan stated: "By considering Ms. Wasarovich's role in the murder, the trial court confused the threshold issue whether a policy provides coverage with the provision excluding liability from injury as a result of an intentional act." 214 Mich. App. at 325. The court held: "In determining whether an accident occurred, we must view the incident itself from the standpoint of the insured actor who caused the injury in question." 214 Mich. App. at 327. The dissent of Judge Root pointed out the lack of precedent directing such an interpretation and stated: "The contract is silent in terms of the conflicting perspectives of coinsureds, leaving two equally possible constructions that can be placed on the policy. . . . [T]his contract is ambiguous and is interpreted in favor of the insured, Patricia Wasarovich." 214 Mich. App. at 331-32. Although *Wasarovich* supports Safeco's position on the accident

question, the weakness in the majority's analysis is shown in the dissent.

In *Wilcox*, minor plaintiffs brought claims of sexual abuse against Shirley Wilcox and her ex-husband, who were foster parents, as well as various other defendants. Shirley was allegedly negligent for failing to report her ex-husband's abusive actions and failing to warn or provide safety to the minors in her home against her ex-husband's activities. Wilcox's liability insurer filed a declaratory judgment action, seeking a noncoverage determination in that no accident was alleged and Wilcox's and her ex-husband's conduct was intentional. The policy did not define accident. The trial court granted summary judgment to Wilcox and denied the insurer's summary judgment motion. The Supreme Court of Idaho reversed. Citing the definitions of accident contained in Black's Law Dictionary 14 (5th ed. 1979) and Webster's Encyclopedic Unabridged Dictionary 9 (1989), the court held that accident has a settled legal meaning or interpretation. The court looked to Wilcox's actions, not those of her ex-husband, in determining whether an accident had occurred: "It is her conduct that we must look to, and not to her ex-husband's conduct, because she is the only one whose acts could be covered by the policy in question." 123 Idaho at 9. The court held:

> "Looking to Wilcox's alleged conduct, we find that it is not an 'occurrence' under the policies because it was not the conduct which caused injury. The injury suffered by the minors is child molestation. While the acts or failure to act by Wilcox may have created or contributed to the environment which permitted her ex-husband's conduct, Wilcox did not commit the acts complained of by the twelve anonymous plaintiffs. Therefore, the [policies] do not provide coverage for Wilcox." 123 Idaho at 9.

No severability clause is discussed in *Wilcox*. The *Wilcox* court's analysis, as in *Grayes*, was based on a finding of lack of causation.

The Brumleys cite the following cases to support their position that the term "occurrence" is ambiguous: *Wayne Tp. Bd. of Sch. Com'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205 (Ind. App. 1995); *Hanover Ins. Co. v. Crocker*, 688 A.2d 928 (Me. 1997); and *Property Cas. Co. of MCA v. Conway*, 147 N.J. 322, 687 A.2d 729 (1997). In *Wayne Township*, a claim of sexual molestation was

brought against an elementary school principal and the school. While the principal's conduct was acknowledged as intentional, the school's conduct was characterized as negligent. The school's liability insurers denied coverage. The district court granted summary judgment to the insurers on the coverage issue on a number of grounds, including that there was no "occurrence" within the meaning of the policy, which defined that term as: " 'An accident . . . which results in bodily injury . . . neither expected no[r] intended from the standpoint of the insured.' " The policy also contained a severability clause. The Indiana Court of Appeals reversed the district court's ruling on the "occurrence" issue, holding that with respect to the school's alleged conduct, there was coverage:

"[T]he plain and unambiguous language of the policy requires that claims against each insured be treated separately. The child was molested by [the principal], who is an insured separate from the school under the Indiana Insurance policy. The inference of an intent to injure S.M. cannot be imputed to the school." 650 N.E.2d at 1209.

The term "occurrence" was expressly defined to be determined from the standpoint of the insured. However, the severability clause also influenced the court's decision.

In *Crocker*, a daughter brought a negligence action against her mother, alleging that the mother failed to take steps to prevent the father from sexually abusing the daughter after knowing about the abuse. The mother's homeowner's policy carrier sought a declaratory judgment that it owed no duty to defend or indemnify, in that no covered occurrence was alleged. The district court entered summary judgment against the insurer as to both the duty to defend and to indemnify. The Supreme Judicial Court of Maine affirmed the duty to defend determination but held that the duty to indemnify determination was premature. The policy defined "occurrence" as an accident, but did not define accident. The court focused on the alleged negligent conduct of the mother in determining that such conduct was an accident and a covered occurrence within the meaning of the policy. The court also determined that the exclusion for injuries "either expected or intended from the standpoint of the insured" did not apply, because the alleged negligent conduct of the mother was not intentional. 688 A.2d at

931. The insurer also argued that public policy should preclude coverage because otherwise, coverage for child molestation claims would be permitted through the back door. The court disagreed: "Public policy does not prohibit insurance coverage for an insured whose negligence contributed to an injury from sexual abuse." 688 A.2d at 931.

*Conway* considered the issue of whether a homeowner's policy covered the vicarious statutory liability of parents, the named insureds, for intentional vandalism of a public school by the insureds' minor son. The New Jersey Law Division found no coverage, the Appellate Division reversed, and the Supreme Court of New Jersey affirmed the Appellate Division. The policy defined "occurrence" as an accident, contained an exclusion for injury "expected or intended by the insured," and also contained a severability clause. 147 N.J. at 325. In a declaratory action concerning coverage, the insurer argued that there was no occurrence in that there was no accident from the son's perspective. The court viewed the undefined term "accident" in the policy as introducing ambiguity into the definition of "occurrence," thus construing against the insurer and noting that an act could be viewed as intentional from the perspective of one insured but "need not be expected from that of another insured." 147 N.J. at 327. The court cited as persuasive cases from other jurisdictions dealing with similar factual circumstances in which coverage was afforded to parents held vicariously liable for acts of their children. The court also discounted the public policy argument of the insurer, stating: "Permitting parents to insure against their vicarious liability increases the likelihood that funds will be available to compensate for damage to school property." 147 N.J. at 330.

13 Appleman, Insurance Law and Practice § 7486, p. 632 (1976) provides:

"The absence of any definition of the term 'accident' in the policy merely means that an interpretation by law shall apply rather than an interpretation by contractual language. And where it is not defined in the policy, it must be interpreted in its usual, ordinary and popular sense. The word will, however, be accorded a liberal construction since it is ambiguous."

See 10 Couch on Insurance 2d § 41:14 (1982):

"The fact that an accident is caused by or is traceable to the act of a person other than the insured does not prevent the occurrence from being an 'accident'. When the injury is not the result of the misconduct or the participation of the in[s]ured party, it is, as to him, accidental although inflicted intentionally by the other party."

2 Windt on Insurance Claims & Disputes § 11.03, p. 194 (3d ed. 1995), identifies a split in the courts concerning whether there is a covered "occurrence" when the liability claim stems from an employee's intentional act of wrongdoing, and the employer is sued for negligent hiring, retention, or supervision. At § 11.03, p. 194-95 n.53, Windt discusses various cases taking the view that the employer's direct act of negligent hiring, etc. should be viewed as an "occurrence."

Safeco argues that because the occurrence definition is not in the policy exclusions portion of the policy, the rule of construction that an insurer must use clear and unambiguous language when limiting or excluding coverage should not apply. Safeco also points out the rule that the insured has the burden of proving he or she falls within the coverage provisions. However, notwithstanding those familiar rules of policy construction, even assuming the "occurrence" definition is a coverage provision, the question still remains whether the definition is ambiguous. If it is, then that ambiguity must be construed against the insurer, no matter what part of the policy it appears in.

Whenever a liability policy bases coverage on an occurrence, defined in the policy as an accident, the term accident not being defined, ambiguity seems to arise whenever the conduct of more than one insured is involved in the claim. As the New Jersey Supreme Court noted in *Conway*, the same act can be viewed as either intentional or accidental, depending on the perspective used. The intentional act exclusion would appear to be superfluous if the "occurrence" definition and the term "accident" are interpreted as restricting coverage to the extent urged by Safeco.

If the perspective of the injured person is used, then essentially any injury that the injured person did not inflict on himself or herself could be considered an accident, and the broadest possible coverage would be afforded. See 1 Long, The Law of Liability Insurance § 4.20[1], pp. 4-151-152 (1997) ("The determination of

an accident within the occurrence definition is to be made from the standpoint of the insured, not from the viewpoint of the victim to whom any calamity may seem to be unfortuitous.").

In *Raymer*, 251 Kan. 689, this court considered a severability and exclusionary clause in a homeowner's liability policy in determining coverage for a negligent supervision claim against the parents for the child's vandalism of a school building. The opinion does not indicate that the insurer raised the issue of whether there was an "occurrence" within the meaning of the policy as a coverage defense, although that term was defined in the policy as follows:

"[O]ccurrence means: a sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured." 251 Kan. at 691.

This definition expressly provides that a resulting injury "neither expected nor intended by the insured" is included within the coverage. The "occurrence" definition in *Raymer* expressly referenced the term "the insured." The severability clause would create ambiguity as to who is "the insured."

The definition of "occurrence" in the Safeco policy here simply defines it as an "accident," omitting any provision that the resulting injury be neither expected nor intended by the insured. Should leaving out any reference to "insured" make the "occurrence" definition more or less ambiguous? Lack of any reference in the "occurrence" definition to the term "insured" may mean that the severability clause would by itself create no ambiguity. However, even without the severability clause, the definition still contains ambiguity, because it does not specify from whose perspective the accident determination is to be made. Aside from the effect that a severability clause may have, it would seem a strange result if a definition of "occurrence" containing "accident" as an undefined term were held to be less ambiguous that an "occurrence" definition containing "accident" as a defined term.

We hold that the lack of any definition for "accident" in the Safeco policy and the failure to specify from whose standpoint the accident determination is to be made when more than one insured

is involved weighs in favor of finding ambiguity in the "occurrence" definition and, therefore, construction in favor of the insured.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

SIX, J., dissenting: I would affirm the district court and the Court of Appeals in denying coverage.

I disagree with the majority's finding of ambiguity in the "exclusion" section of the Safeco policy. *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974), forms the departure point for the majority's discussion. A critical analysis of *Upland* is found in the dissent in *Marquis v. State Farm Fire & Cas. Co.,* 265 Kan. 317, 335-40, 961 P.2d 1213 (1998). A part of that dissent merits repeating here.

Justice Larson, speaking for the three *Marquis* dissenters, said:

"Kansas appears to be completely out of step with all the holdings around the United States with regard to our interpretation of these provisions. The overwhelming majority of states, in determining coverage, look to the underlying cause of the injury rather than the specific theory of liability alleged. . . .

"Our holding in *Upland* is not only contrary to the almost unanimous weight of authority in other jurisdictions, but has also been to some extent disregarded by our own Court of Appeals. . . .

"The *Upland* test and theory has not survived the logic and judgment of other states. It is an unsupportable minority. It needs to be abandoned. It is also confusing and allows coverage beyond that anticipated in the policy."

Recognizing that *Upland* lives, I address the majority's conclusion flowing from its observation that because of *Upland*, "one looks to the underlying theory of liability alleged to determine whether there was coverage." The Brumleys, emphasizing the severability clause of the Safeco policy, rely on *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456 (1992), as their primary authority. In holding that coverage should apply to the negligent supervision claim against the Raymers, we said:

"We agree with the Court of Appeals determination *that under the specific facts of this case,* in construing the exclusionary and severability of interests clauses of a homeowners insurance policy, the exclusions are to be applied only against the insured for whom coverage is sought." (Emphasis added). 251 Kan. at 699.

Our holding in *Raymer* was intended to be narrow and fact-specific. *Raymer* involved a liability coverage exclusion for injury intended by "an insured." 251 Kan. at 698. This case involves an exclusion for injury intended by "any insured." *Raymer* is distinguishable on that basis.

The Brumleys cite the first listing from the definition of "any" contained in the Random House Dictionary of the English Language 68 (1973). The complete definition provides:

"*adj.* 1. one, a, an, or some; one or more without specification or identification: *If you have any witnesses, produce them. Pick out any six you like.* 2. whatever or whichever it may be; at any price. 3. in whatever quantity or number, great or small; some; *Have you any butter?* 4. every; all: *Any schoolboy would know that. Read any books you find on the subject.* 5. (following a negative) at all: *She can't endure any criticism. —pron.* 6. any unspecified person or persons; anybody; anyone: *He does better than any before him.* 7. any single one or any ones; any unspecified thing or things; any quantity or number: *We don't have any left. — adv.* 8. in whatever degree: to some extent: at all: *Do you feel any better?*"

Although the first definition listed does equate "any" with "an," that definition goes on to define "any" as "one or more without specification or identification." The context in which "any" is used in the Safeco policy must also be considered. "Any" is used as an adjective modifying the noun "insured."

We emphasized the distinctive nature of "any" in a severability clause context in *Rose Constr. Co. v. Gravatt*, 231 Kan. 196, 642 P.2d 569 (1982). We reasoned that a policy's use of the term "the insured" obviously is not the same as "named insured" or "any insured." 231 Kan. at 197-98. We acknowledged *Rose's* distinction between "the insured" and "any insured" in *Raymer*. 251 Kan. At 698.

Other jurisdictions have considered similar policy interpretation issues. In *Taryn E.F. v. Joshua M.C.*, 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993), Taryn, a minor, and her parents sued Joshua, a minor, and his parents for alleged sexual assaults and batteries Joshua committed while babysitting Taryn. The trial court granted summary judgment to the insurer. The Wisconsin Court of Appeals affirmed, holding that the exclusionary language for intentional acts of "any insured" "unambiguously denies coverage for all liability

incurred by each and any insured as a result of certain conduct by any of the persons insured by the policy." 178 Wis. 2d at 724.

*Raymer* endorsed the Court of Appeals' conclusion that coverage existed, a conclusion based on the reasoning of the Wisconsin Court of Appeals in *Northwestern Nat. Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 400 N.W.2d 33 (Ct. App. 1986), *rev. denied* 134 Wis. 2d 458 (1987). I follow with a quote from *Taryn;* however, an explanatory prologue to the *Taryn* language is in order. (1) The intentional acts exclusion in *Raymer* said "an insured." (2) The exclusion in *Nemetz* said "an insured." (3) *Raymer* relied on *Nemetz*. (4) The exclusion in *Taryn* said "any insured." (5) The exclusion here in the Safeco policy said "any insured." *Taryn* distinguished *Nemetz* as follows:

"In contrast, the policies in *Nemetz*, 135 Wis. 2d at 253-54 n.2, 400 N.W.2d at 37 n.2, excluded coverage for damages 'expected or intended by *an* insured person' and damages 'intended or expected by *the* insured.' We noted in *Nemetz* that by using the terms '*an* insured,' and '*the* insured' in their exclusionary provisions, the insurers failed to adequately draft the policy to exclude coverage for both insureds based on the excludable acts of one insured. *Id.* at 256, 400 N.W.2d at 38. Thus, we held that the exclusionary clauses precluded coverage for the insured who committed the excludable acts, but not for the innocent insured. *Id.* Here, the exclusionary clause precludes coverage under the policy based on the excludable acts of *any* insured. Even when read with the severability clause, this exclusion unambiguously operates to preclude coverage to all insureds for liability attributable to the excludable acts of any one of the insureds. Unlike the insurers in *Nemetz*, Little Black drafted its policy more carefully to exclude this risk.

"Taryn argues that '[t]here is no logical or grammatical difference between "an" and "any".' We disagree. 'An' is an indefinite article used before nouns beginning with a vowel or, sometimes, a soft consonant (e.g. an herb) instead of the related indefinite article 'a.' WEBSTER'S THIRD NEW INT'L DICTIONARY 75 (Unabr. 1976). 'A' is 'used as a function word before most singular nouns [or] to suggest limitation in number . . . .' WEBSTER'S THIRD NEW INT'L DICTIONARY at 1. 'The articles (*a, an, the*) may be classed as adjectives because they possess limiting or specifying functions.' HARRY SHAW, ERRORS IN ENGLISH AND WAYS TO CORRECT THEM, 277 (1970). 'Any' is defined as 'one indifferently out of more than two: one or some indiscriminately of whatever kind . . . one, no matter what one: EVERY — used as a function word esp. in assertions and denials to indicate one that is selected without restriction or limitation of choice . . . .' WEBSTER'S THIRD NEW INT'L DICTIONARY at 97. Thus, the distinction between 'an' and 'any' is that the former refers to one object

(an oak tree) and the latter refers to one or more objects of a certain type (any person)." 178 Wis. 2d at 724-26.

The coverage question in *Taryn* concerned a claim for vicarious liability against the parents, not direct negligence, as in a negligent supervision claim. However, other courts relying on *Taryn* have not distinguished it on that basis. See, *e.g., Johnson v. Allstate Ins. Co.*, 687 A.2d 642, 645 (Me. 1997); *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 182 (N.D. 1994). I agree with *Taryn's* analysis of the "any insured" exclusion clause language.

Other courts and text authority have disagreed with the majority's reasoning in this case. See 2 Windt, Insurance Claims and Disputes § 11.08, p. 234 (3d ed. 1995).

"[I]t has been held that an 'any insured' exclusion will be treated like a 'the insured' exclusion if the policy contains a severability clause; that is, a provision stating that the 'insurance applies separately to each insured.' Such a holding is not justifiable. A severability clause provides that each insured will be treated independently under the policy. The fact remains, however, that as applied even independently to each insured, an 'any insured' exclusion unambiguously eliminates coverage for each and every insured.

. . . .

"The rationale used by the courts that have held . . . that a severability clause renders an 'any insured' exclusion meaningless—have done so on the basis that, otherwise, the severability clause would itself be meaningless. That is untrue. A severability clause would still have meaning in a variety of contexts." 2 Windt, § 11.08, pp. 234-35.

See *California Casualty Ins. Co. v. Northland Ins. Co.*, 48 Cal. App. 4th 1682, 1696, 56 Cal. Rptr. 2d 434 (1996) ("The unambiguous intent [of the watercraft exclusion] is to exclude coverage for *any* insured, even if liability of that insured does not arise from his or her personal ownership or use of the watercraft.").

Two recent Missouri cases have considered the effect of a severability clause on a liability coverage exclusion in a homeowner's policy: *American Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531 (Mo. App. 1995), and *American Family v. Copeland-Williams*, 941 S.W.2d 625 (Mo. App. 1997). *Moore* involved an exclusion for injury arising out of "business pursuits of any insured . . . by an insured" and a liability coverage question concerning a claim for a child's dog bite at the babysitter's home. 912 S.W.2d at 533. The

babysitter, her husband, and her son (who owned the dog) were insureds under the policy. The district court awarded summary judgment to the insurer on the coverage question, and the Missouri Court of Appeals affirmed:

"Because an insurance contract is an agreement between parties that should be interpreted in a manner consistent with the expressions therein, the policy before us unambiguously expresses an intention to deny coverage to all insureds when damage is the result of a business pursuit. The purpose of the severability clause is not to negate the plainly worded meaning of the business exclusion clause." 912 S.W.2d at 534-35.

*Copeland-Williams* involved a homeowner's policy with a severability clause and an exclusion for injuries "expected or intended from the standpoint of any insured." 941 S.W.2d at 627. The insured husband was alleged to have sexually molested his step-granddaughter. The insured wife allegedly negligently allowed the molestation. Although coverage for the husband was held excluded, the trial court found that coverage existed for the claim against the wife. The Missouri Court of Appeals reversed, relying on *Moore*, viewing the *Moore* court as having rejected the reasoning of *Marnell*. The *Copeland-Williams* court also found the reasoning of *Taryn*, 178 Wis. 2d 719, and *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179 (N.D. 1994), to be persuasive, holding: "The use of the phrase 'any insured' makes the exclusionary clause unambiguous even in light of the severability clause." 941 S.W.2d at 629. See also *Michael Carbone, Inc. v. General Acc. Ins. Co.*, 937 F. Supp. 413 (E.D. Pa. 1996) (summary judgment for the insurer on the coverage issue, holding that the automobile exclusion applied to bar coverage). *Carbone* concluded: "[T]he bulk of the courts which have addressed the issue have held that an exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds. [Citations omitted.] . . . I believe that the majority view is better reasoned." 937 F. Supp. at 422. *Carbone* continued:

"Following the majority rule in this case therefore gives meaning to both the word 'any' in the automobile exclusion and the separation of insureds clause. This adheres to the Third Circuit's dictate that a court interpreting an insurance policy

'should read policy provisions to avoid ambiguities if possible and should not torture the language to create them.' " [Citation omitted.] 937 F. Supp. at 423.

*Jessica M.F. v. Liberty Mut. Fire Ins. Co.*, 209 Wis. 2d 42, 561 N.W.2d 787 (Ct. App.), *rev. denied* 210 Wis. 2d 46 (1997), involved the question of liability coverage for claims of sexual abuse of minor grandchildren against grandparents. The grandfather was sued for acts of sexual abuse over several years and the grandmother for negligence in failing to prevent the acts or protect the grandchildren. The homeowners' policies involved included severability clauses and exclusions for injuries expected or intended by "the insured" or "an insured." The trial court decided there was no coverage, based on the intentional acts exclusions. The grandchildren and parents appealed the coverage determination as to the claims against the grandmother, and the Wisconsin Court of Appeals affirmed. The court examined the alleged conduct of the grandmother and reasoned that "if the grandmother 'knew' of her husband's actions, she 'expected or intended' the harm to her grandchildren." 209 Wis. 2d at 54. The court stated: "[W]e conclude that, in the context of child sexual abuse allegedly committed by one's spouse under circumstances in which the spouse 'in the exercise of reasonable care, should have known,' the intentional-acts exclusion precludes coverage." 209 Wis. 2d at 55. The court distinguished *Nemetz* as follows:

"*Nemetz* dealt with arson and, therefore, did not encounter the special considerations that arise in the context of child sexual abuse, particularly within a family. Moreover, *Nemetz* considered whether an apparently *innocent* spouse retains separate coverage. Here, by contrast, the grandmother allegedly knew or should have known. Therefore, according to the pleadings, she was not 'innocent.' Indeed, *Nemetz* reiterates the 'premise that public policy considerations should prevent recovery by an insured who is not innocent with respect to intentional damages.' *See id.*, 135 Wis. 2d. at 258, 400 N.W.2d at 38. A grandmother who, according to the complaint, knew or should have known of her husband's sexual abuse of their four grandchildren 'for several years' certainly 'is not innocent with respect to [the] intentional damages' resulting from sex abuse." 209 Wis. 2d at 58-59.

The concurring opinion of Judge Schudson identified some cogent public policy reasons for the decision:

"Moreover, what now may seem a remote possibility could become far less remote should courts ever conclude that the so-called 'non-offending' spouse could receive homeowner insurance coverage for the offender's abuse. Not only would prevention, intervention, and deterrence of sexual abuse decline, but collusion could increase as sexually-abusive families discovered they could not only assault children, but gain insurance recoveries as well.

. . . .

"Thus, I also conclude that although in most cases any impact is remote, in some situations the unavailability of coverage will prevent abuse and, where abuse has occurred, will motivate the 'non-offending' spouse to intervene on behalf of the victims." 209 Wis. 2d at 62-64.

I suggest that the *Upland* rule, as described in *Raymer*, 251 Kan. at 697, (*i.e.*, to determine coverage, do not look to the underlying cause of the injury but to the specific theory of liability alleged) has not been consistently followed by this court. I refer to *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515, (1998), our most recent case involving criminal activity, injury, and insurance coverage.

In *Bugg*, we reversed the district court and denied coverage on a negligence claim for injury arising from a bar shooting. The injured patrons alleged the bar owners were negligent for (a) firing a gun in a crowded tavern, (b) failing to have exits clearly marked within the tavern, and (c) failing to properly protect patrons from an assailant.

The policy in *Bugg* had an exclusion for assault and battery. We looked not to the specific theory of liability alleged, *i.e.*, negligence, but to the underlying cause of the injury, the assault and battery. Syllabus ¶ 5 in *Bugg* says: "When a liability insurance policy contains an assault and battery exclusion, a negligence claim for injuries arising out of an assault and battery is irrelevant. An assault and battery exclusion clause is intended to exclude all claims arising out of an assault and battery."

In *Bugg*, Woodberry, one of the injured patrons, relying on *Raymer*, argued that her specific theory of liability was negligence. Woodberry pointed out that she made no allegations "in her petition that an assault or battery occurred with respect to her person." She also observed that she "makes no allegation that the employees of Tewz Enuff [the bar] intended to injure her." She

concluded, therefore, the assault or battery and the intentional acts provisions of the policy did not apply. The insurer should be required to provide coverage for any liability that the insured is found responsible for under the negligence actions. *Bugg* does not reference *Raymer* or *Upland*. I agree with the result in *Bugg* and would apply the *Bugg* reasoning here.

## Occurrence

I also disagree with the majority's occurrence analysis. Neither the majority nor either party has identified a Kansas severability clause case characterizing the defined term "occurrence" or the undefined term "accident" ambiguous when liability is sought against a co-insured for injuries intentionally caused by another co-insured.

The Brumleys are asserting a wrongful death claim against their son-in-law David for the murder of their child Douglas by their daughter Kimberlee. Bodily injury is defined in the policy as including "bodily harm, . . and death resulting therefrom." The damages claimed are for the murder of Douglas because of Kimberlee's intentional act of abuse. We should look at the act which caused the bodily injury resulting in death to decide whether the policy's definition of occurrence applies.

The policy states: " 'occurrence' means an accident, including exposure to conditions which results, during the policy period in **bodily injury** or **property damage**." In *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994), we reviewed the meaning of "occurrence," which was defined as is "occurrence" here. We observed that Kansas has adopted the natural and probable consequences test and that the word accident has a generally accepted meaning according to the popular understanding. 254 Kan. at 553-54.

We have said that an insured has the burden of demonstrating coverage. *Harris*, 254 Kan. at 553. The parties agree that Kimberlee's fatal blow to Douglas' abdominal area, tearing the mesentery and resulting in peritonitis, was intentional. Kimberlee pled to second-degree murder.

David was not present at the time Kimberlee fatally injured Douglas. The question of causation arises. I would focus our analysis here on causation in determining whether there was an "occurrence."

A similar fact situation was considered in *Mutual of Enumclaw v. Wilcox*, 123 Idaho 4, 843 P.2d 154 (1992), and *Allstate Insurance Company v. Grayes,* 216 Ga. App. 419, 454 S.E.2d 616 (1995), discussed by the majority.

David's alleged negligent conduct did not cause Douglas' death, the act complained of, so there is no "occurrence" as to David. I do not find that the absence of a severability clause discussion in either *Wilcox* or *Grayes* dilutes the effect of the causation rationale.

The absence of causation here is endorsed by our disposition of the claims of negligent entrustment in *Davey v. Hedden,* 260 Kan. 413, 920 P.2d 420 (1996). Jeff and Jon Hedden, age 14, were at home under the care of their married sister while the parents were on vacation in Hawaii. While at a friend's home, the plaintiff Davey asked Jon for and was granted permission to drive the Hedden's Mercedes convertible. Catherine Farnsworth was Davey's passenger. Both were under 16. Catherine in due course shifted to the driver's position, lost control, and hit a tree. Davey sued Farnsworth, the vacationing parents, and others. K.S.A. 8-222, which imposes joint and several liability on any person who permits one under 16 to drive, was involved. The district court held that negligent entrustment, if it existed at all, was not the proximate cause of Davey's injuries. 260 Kan. at 417-18. In affirming the district court, we reasoned that the ultimate question deals with the causation of Davey's injuries. We held the negligence of Davey and Catherine constituted 100% of the efficient intervening cause. Any negligent entrustment was not the efficient cause of Davey's injuries. 260 Kan. at 428.

Here, any negligence of David, who was not present when Kimberlee murdered Douglas, did not cause the death of Douglas.

The majority emphasizes the absence of a definition of "accident" in the "occurrence" section. An explanation of the 1966 revisions in the standard comprehensive liability form keying cover-

age to the word "occurrence" and not to "accident" is found in Jerry, Understanding Insurance Law § 65[a], p. 333 (1987).

We should affirm the result reached by the district court and the Court of Appeals.

MCFARLAND, C.J., and LARSON, J., join in the foregoing dissenting opinion.