MICHIGAN BASIC PROPERTY INSURANCE ASSOCIATION v
WASAROVICH

Docket No. 166039. Submitted December 13, 1994, at Detroit. Decided
November 17, 1995, at 9:15 A.M.

Michigan Basic Property Insurance Association, the homeowner's
insurer of Joseph and Patricia Wasarovich, brought an action
in the Wayne Circuit Court against Patricia Wasarovich and
Michael Feldt, as personal representative of the estate of
August Feldt, seeking a declaration that it has no duty to
defend and indemnify Patricia Wasarovich against a negligence
action brought by Michael Feldt for the fatal shooting of
August Feldt by Joseph Wasarovich at the Wasarovich home.
On motions for summary disposition by the parties, the court,
Denise Page Hood, J., granted summary disposition for the
defendants. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court, in granting summary disposition for the
defendants, erred in ruling that Feldt's murder by Joseph
Wasarovich was an occurrence for which Patricia Wasarovich
can claim insurance coverage. The plaintiff's policy covers
liability for damages resulting from bodily injury caused by an
occurrence. The policy defines "occurrence" as an accident that
results in bodily injury. The policy does not define "accident," a
term commonly used to mean an undesigned contingency, a
casualty, a happening by chance, something out of the usual
course of things, unusual, fortuitous, not anticipated, and not
naturally to be expected. Where, as here, there are multiple
insureds, the intent of the insured who caused the injury
determines whether the injury-causing incident is an occur-
rence within the meaning of the policy. Because Joseph Wasa-
rovich had intended to kill August Feldt, the shooting incident
was not an occurrence under the terms of the plaintiff's policy.

2. The trial court erred in denying the plaintiff's motion for
summary disposition based on the policy exclusion for injury

REFERENCES

Am Jur 2d, Insurance § 727.
See ALR Index under Homeowner's Insurance; Insurance and
Insurance Companies.

expected or intended from the standpoint of the insured without determining whether Patricia Wasarovich had expected or intended the shooting of August Feldt by Joseph Wasarovich. However, given the determination by the Court of Appeals that the shooting was not an occurrence under the plaintiff's policy, findings of fact regarding Patricia's expectation or intention is unnecessary.

Reversed.

L.C. Root, J., dissenting, stated that the plaintiff's policy is ambiguous with respect to whether an injury-causing incident is to be examined from the standpoint of the insured who caused the injury or from the standpoint of an innocent coinsured in determining whether the incident is accidental with respect to the coinsured, that such ambiguity should be resolved in favor of coverage for Patricia Wasarovich, and that the case should be remanded for findings with respect to the applicability of the exclusion for expected or intended injury.

INSURANCE — LIABILITY — PERSONAL INJURY — MULTIPLE INSUREDS.

Whether personal injury to a third party is accidental and therefore covered by a liability insurance policy that has more than one insured is determined by examining the intent of the insured who caused the injury; no insured is covered by such a policy where the insured who caused the injury intended the injury.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Lloyd G. Johnson* and *Robert D. Goldstein*), for Michigan Basic Property Insurance Association.

*Merlotti Legal Services, P.C.* (by *Vincenzina R. Merlotti*), for Patricia Wasarovich.

*Musilli, Baumgardner, Wagner & Parnell, P.C.* (by *Ralph Musilli*), for Michael Feldt.

Before: CORRIGAN, P.J., and CAVANAGH and L. C. ROOT,* JJ.

CORRIGAN, P.J. In this action for declaratory judgment concerning insurance, plaintiff Michigan

* Circuit judge, sitting on the Court of Appeals by assignment.

Basic Property Insurance Association appeals as of right the denial of its motion for summary disposition pursuant to MCR 2.116(C)(10) and the grant of summary disposition in favor of defendants Patricia Wasarovich and Michael Feldt, as personal representative of the estate of August Feldt, pursuant to MCR 2.116(I)(2). We reverse.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Michigan Basic's action for declaratory judgment arises from the August 26, 1990, shooting death of August Feldt. On August 24, 1990, Patricia and Joseph Wasarovich were divorced. Two days later, they argued on the telephone about custody of their son. That night, Joseph Wasarovich, armed with a handgun, arrived at 11356 Brammel Street in Detroit where Patricia Wasarovich and August Feldt, her roommate, resided. Joseph told his ex-wife to lock the door and close the drapes. He then ordered August to lie on the floor. When August refused, Joseph shot him in the head, killing him instantly. Joseph next sexually assaulted, shot, and wounded his ex-wife. He then shot and killed himself.

Michael Feldt, as personal representative of August Feldt's estate, subsequently sued Ms. Wasarovich, the owner of the home where Feldt was murdered, for her negligence in failing to protect Feldt from Joseph Wasarovich's crime. The Wasaroviches had purchased an occurrence-based homeowner's policy for the Brammel Street house. Michigan Basic undertook Ms. Wasarovich's defense pursuant to that homeowner's insurance policy but also then initiated the present declaratory judgment action to determine whether it had a duty to defend or indemnify Ms. Wasarovich in the underlying litigation. It moved for summary

disposition, asserting that the occurrence-based insurance policy did not provide liability coverage because Feldt's murder was not an "occurrence" as defined in the policy. In the alternative, Michigan Basic argued that the policy exclusion for acts intended or expected to cause bodily injury from the standpoint of the insured precluded coverage.

Finding that Ms. Wasarovich was an innocent coinsured, the court ruled that the killing of Feldt was an "accident" within the policy definition of an "occurrence" and concluded that the policy exclusion for intentional acts did not apply. The court ruled as a matter of law that Michigan Basic owed a duty to defend Ms. Wasarovich in the underlying negligence action and granted summary disposition in favor of defendants.[1]

## II. INTERPRETATION OF THE OCCURRENCE-BASED INSURANCE POLICY

Michigan Basic contends that the trial court erred in its interpretation of the occurrence-based homeowner's insurance policy. This Court interprets an insurance policy by first reviewing the policy language in an effort to effect the intent of the parties. *Auto Club Group Ins Co v Marzonie,* 447 Mich 624, 630; 527 NW2d 760 (1994). If the language is clear and unambiguous, we apply the terms as written. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 567; 489 NW2d 431 (1992). If an ambiguity exists, it is resolved in favor of the insured. *Group Ins Co of Michigan v Czopek,* 440 Mich 590, 595; 489 NW2d 444 (1992). However, a policy is not rendered ambiguous simply because it omits the definition of a term. Absent a policy

---

[1] The trial court limited its finding that Patricia Wasarovich was an innocent coinsured to the declaratory judgment action, leaving open the possibility that she could later be found negligent in the underlying action.

definition, we assign a term its commonly used meaning. *Marzonie,* supra at 631; *Czopek, supra* at 596.

Similarly, in applying exclusionary provisions, this Court strictly construes the policy language against the insurer. *Czopek, supra* at 597. If the policy language is clear and unambiguous, it must be applied as written. *Marzonie, supra* at 631. "Indeed, this Court will not countenance holding 'an insurance company liable for a risk it did not assume.'" *Marzonie, supra,* quoting *Churchman, supra* at 567.

### A. LIABILITY COVERAGE: OCCURRENCE

Michigan Basic first contends that the trial court erroneously ruled that August Feldt's death was an occurrence and therefore is covered under the homeowner's policy. We agree. The clear and unambiguous language of the "Liability Coverages" section of the Wasaroviches' homeowner's policy provides that Michigan Basic will cover liability "for damages resulting from bodily injury or property damage caused by an occurrence." The policy defines an "occurrence" as

an accident, including exposure to conditions, which results, during the policy period, in:
  a. bodily injury; or
  b. property damage.

The policy, however, does not define the term "accident." As a result, applying the directive of our Supreme Court, we must assign the term its commonly used meaning:

[A]n accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not

anticipated, and not naturally to be expected.
[*Marzonie, supra* at 631.]

We cannot say that Joseph Wasarovich's act of
murdering August Feldt was an "undesigned con-
tingency" or "chance happening." Our analysis
should focus on the injury-causing act. The trial
court found, and neither party disputes, that Jo-
seph Wasarovich intended to murder Feldt. That
Patricia Wasarovich did not anticipate her ex-hus-
band's act of murdering Feldt does not render the
murder an undesigned contingency or chance hap-
pening.

The trial court found that Joseph Wasarovich's
act was intentional. In determining whether the
shooting death of August Feldt was an accident,
however, the trial court erroneously viewed the
murder from the standpoint of Ms. Wasarovich.
Because the court found that she was an innocent
coinsured, it concluded that Feldt's death was an
"accident" and thus an "occurrence" for purposes
of liability coverage. In so doing, we believe that
the trial court erred as a matter of law (as we
faithfully attempt to interpret and apply our Su-
preme Court's rulings).

First, the court erred in applying the innocent
coinsured doctrine to determine whether the oc-
currence-based policy covered liability arising from
Feldt's murder. That doctrine applies in cases
where an innocent spouse or coinsured makes a
claim for insurance proceeds for a loss of property
that was jointly owned with the insured responsi-
ble for the loss. *Morgan v Cincinnati Ins Co,* 411
Mich 267; 307 NW2d 53 (1981); see also *Borman v
State Farm Fire & Casualty Co,* 446 Mich 482; 521
NW2d 266 (1994); *Ramon v Farm Bureau Ins Co,*
184 Mich App 54; 457 NW2d 90 (1990). In *Morgan,*
our Supreme Court interpreted a statutory fire

insurance policy provision that voided the policy
in cases of fraud. *Morgan* held that

> the provision voiding the policy in the event of
> fraud by "the insured" is to be read as having
> application only to the insured who committed the
> fraud and makes claim under the policy. The
> provision has no application to any other person
> described in the policy as an insured. [*Morgan*,
> *supra* at 276.]

In other words, the innocent coinsured doctrine
prevents an insurer from voiding a policy that
would otherwise cover the particular loss on the
basis of fraud by the insured as long as the coin-
sured is innocent of any wrongdoing.[2] The doctrine
is not a mechanism to define an occurrence and
thus establish coverage under the policy. Rather,
the doctrine prevents an insurer from *excluding* a
party from coverage on the basis of fraud.

Unlike *Morgan, supra,* this case does not involve
an attempt to void a policy because of an insured's
fraudulent claim. Rather, Michigan Basic contends
that the terms of the policy do not cover Feldt's
murder. By considering Ms. Wasarovich's role in
the murder, the trial court confused the threshold
issue whether a policy provides coverage with the
provision excluding liability from injury as a re-
sult of an intentional act. Accordingly, the trial
court erred in applying the innocent coinsured
doctrine to determine that Michigan Basic owed a
duty to defend and indemnify Ms. Wasarovich.

Although the matter is not entirely free from
doubt, we believe that the trial court also erred in

---

[2] In cases where policy language voids the policy because of "any"
or "an" insured's fraudulent conduct, no other insured, including
innocent coinsureds, may recover under that policy. See *Borman,
supra; Allstate Ins Co v Freeman and Metropolitan Property &
Liability Ins Co v DiCicco,* 432 Mich 656, 700; 443 NW2d 734 (1989).

analyzing the shooting from the standpoint of Ms.
Wasarovich. The court found that Joseph Wasaro-
vich intended to murder Feldt. The court con-
cluded, however, that the murder of Feldt was an
"accident" under the policy because Ms. Wasaro-
vich did not intend the act that caused the injury.
We disagree.

In *Arco Industries Corp v American Motorists
Ins Co,* 448 Mich 395; 531 NW2d 168 (1995), our
Supreme Court finally resolved the viewpoint de-
bate (i.e., whether an incident must be analyzed
from the standpoint of the insured or the injured
party).[3] *Arco* held that courts must view the inci-
dent that caused the personal injury from the
standpoint of the insured, and not the injured
party, to determine whether it is an accident.
*Arco, supra* at 405; *Marzonie, supra* (concurring
opinion of Griffin, J., and dissenting opinion of
Levin, J.); see also *Czopek, supra* at 598. The
homeowner's insurance policy in *Arco* defined an
occurrence as:

> [An] accident, including injurious exposure to
> conditions, which results, during the policy period,
> in bodily injury or property damage neither *ex-
> pected nor intended from the standpoint of the
> insured.* [*Arco, supra* at 404. Emphasis added by
> the Supreme Court.]

In determining whether coverage existed, the
Court considered whether an accident had oc-
curred independent of the Court's consideration of
whether the injury was expected or intended from
the standpoint of the insured. *Id. Czopek, supra,*

---

[3] See *Frankenmuth Mutual Ins Co v Piccard,* 440 Mich 539; 489
NW2d 422 (1992) (plurality opinion of Riley, J.) (an incident must be
analyzed from the standpoint of the injured party) and *Marzonie,
supra* (concurring opinion of Griffin, J. and dissenting opinion of
Levin, J., incident must be viewed from the standpoint of the in-
sured); see also *Czopek, supra.*

interpreted a policy definition of occurrence similar to that in *Arco,* but without the "expected or intended from the standpoint of the insured" language. Implicitly viewing the incident from the standpoint of the insured, *Czopek* held that the insured's criminal assault on police officers did not constitute an accident within the meaning of the definition of occurrence. *Czopek, supra* at 597.

In both *Arco* and *Czopek,* the insured who committed the act that caused the injury was the same insured who was being sued in the underlying litigation. However, this case involves two insureds, Joseph Wasarovich, the criminal actor who murdered Feldt, and Ms. Wasarovich, the defendant in the underlying negligence action. Michigan Basic argues for an objective view, because the policy does not define an occurrence "from the standpoint of the insured." Defendants assert that the incident must be viewed from Ms. Wasarovich's standpoint because she is the defendant insured in the underlying action.

Applying the principles established in *Arco,* we conclude that neither party has presented the correct test to determine whether the incident falls within the policy definition of an occurrence. In determining whether an accident occurred, we must view the incident itself from the standpoint of the insured actor who caused the injury in question. *Arco* considered the "accident" aspect of the insurer's definition of occurrence separately from its analysis of the "from the standpoint of the insured" language, *supra* at 404-410. In considering the question whether the incident constituted an accident, the Court analyzed the incident itself from the standpoint of the insured who committed the act that caused the injury. The Court then considered the language contained in the policy itself referring to the expectations or

intentions of the insured. *Id.* The homeowner's policy at issue defines an occurrence as "an accident . . . which results, during the policy period, in personal injury." The "expected or intended from the standpoint of the insured" language is absent from this definition, as it was in the *Czopek* policy. Thus, we must consider only the incident itself in determining whether there was an occurrence. Accordingly, we consider whether Feldt's murder constitutes an accident independent of whether the insured, Ms. Wasarovich, expected or intended the resulting injury. In so doing, we consider only the intent of the insured who caused the injury, Joseph Wasarovich.

The trial court found that Joseph Wasarovich intentionally killed August Feldt. Mr. Wasarovich went to 11356 Brammel Street armed with a pistol. When Feldt refused to do as instructed, Joseph Wasarovich shot him in the head, killing him instantly. Analyzing the shooting from the standpoint of the insured, Joseph Wasarovich, there is no question that the incident was not an "accident" within the policy definition of "occurrence." Accordingly, the trial court erred in finding an occurrence and in ruling that Michigan Basic had a duty to defend Ms. Wasarovich in the underlying negligence action.

B. POLICY EXCLUSION: INJURY EXPECTED OR INTENDED FROM THE STANDPOINT OF THE INSURED.

Michigan Basic also contends that the trial court erred in ruling as a matter of law that Ms. Wasarovich neither expected nor intended the injury to August Feldt. In light of our resolution of the coverage issue, this issue is moot. However, we note that the trial court stated during oral argument:

*I'm satisfied that there's a question of fact about whether or not Patricia Wasarovich should have— could have expected the actions of her ex-husband.* It is clear to the Court based on the indication that there was some violence in this relationship beforehand, that, in fact, some violence had occurred prior in time. *There's not any evidence presented.*

\* \* \*

[W]hether or not [the murder] is an action— accident as it goes to [Patricia] . . . is a question of fact. . . . [W]hat we have before us is an instance where there's been some allegation that [Patricia] should reasonably have known that [Joseph's] violence would escalate and that he might come over here and have a gun and—and, therefore, might then injure a third party, which is a lot of going down the road with it, I think. *It's not clear to me that whether or not that's a reasonable expen— expectation upon her part.*

On this record, whether Ms. Wasarovich expected or intended the injury to Feldt was a question of fact that the court failed to resolve. As a result, the trial court erred in denying Michigan Basic's motion for summary disposition on the basis that the policy precluded coverage under the exclusion for personal injury expected or intended from the standpoint of the insured. However, given our disposition of the preceding issue, we need not remand to the trial court for findings of fact.

We direct the circuit court to enter an order that Michigan Basic owes no duty to defend or indemnify Patricia Wasarovich in the underlying action.

Reversed.

CAVANAGH, J., concurred.

L. C. ROOT, J. *(dissenting).* This is a case of two coinsureds with conflicting perspectives of a shoot-

ing incident. From the standpoint of the now deceased actor, Joseph Wasarovich, the shooting was unquestionably an intended event. From the standpoint of the defendant, Patricia Wasarovich, the shooting was arguably fortuitous and not anticipated, or an accident as defined by *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 402; 531 NW2d 168 (1995). The majority's unprecedented choice between these conflicting perspectives in the interpretation of the contract language is the principal difference between the majority and this writer. To determine if the shooting incident is an accident, which is an occurrence covered by the insurance policy, the majority examines the shooting incident from the standpoint of the insured actor instead of from the standpoint of the arguably innocent coinsured. As addressed below, this writer respectfully dissents from this interpretation as a result of the ambiguity found in the insurance contract language and the lack of precedent directing such an interpretation.

### I. INTERPRETATION OF THE OCCURRENCE-BASED INSURANCE POLICY

The first step in deciding if Michigan Basic must defend and indemnify Ms. Wasarovich is to determine if the shooting is covered by the insurance policy. In interpreting an insurance contract, the general rule is that the policy is enforced according to its terms. *Arco, supra* at 402. If the terms are unambiguous, they are enforced as written. *Id.* at 403. If ambiguity exists, the policy is enforced in favor of the insured. *Group Ins Co v Czopek,* 440 Mich 590, 595; 489 NW2d 444 (1992). A term left undefined is not necessarily ambiguous, but is given its commonly used meaning, *id.* at 596, and

"must take into account the reasonable expecta-
tions of the parties." *Arco, supra* at 403. Finally,
"wherever there are two constructions that can be
placed upon the policy, the construction most fa-
vorable to the policyholder will be adopted." *Pow-
ers v DAIIE,* 427 Mich 602, 623; 398 NW2d 411
(1986).

In its policy, Michigan Basic contracted to de-
fend and indemnify a claim or suit "brought
against an insured for damages because of bodily
injury or property damage caused by an occur-
rence to which this coverage applies. . . ." An
occurrence is defined as "an accident . . . which
results, during the policy period, in bodily injury."
"Accident" is not a defined term, leaving its defini-
tion to case law interpretation, *Czopek, supra,* and
the reasonable expectations of the parties, *Arco,
supra* at 403. As commonly defined, an accident for
insurance purposes is "an undesigned contingency,
a casualty, a happening by chance, something out
of the usual course of things, unusual, fortuitous,
not anticipated, and not naturally to be expected."
*Id.* at 404-405. Accidents are interpreted from the
*subjective standpoint of the insured,* not the in-
jured person. *Id.* at 405, 407.

Applying the definitions and principles of con-
tract construction to the present case, the shooting
death of August Feldt is covered under the policy
if it is an accident from the subjective standpoint
of the insured. *Id.* at 405. The difficulty in this case
arises from the fact that the insurance policy
covers two insured parties with conflicting subjec-
tive standpoints, and *neither the contract terms
nor interpretive case law explain which standpoint
of multiple insured parties is adopted to define an
accident when the standpoints of the insured par-
ties conflict.* The contract is silent in terms of the
conflicting perspectives of coinsureds, leaving two

equally possible constructions that can be placed on the policy. Thus, according to *Powers, supra* at 623, "the construction most favorable to the policyholder will be adopted." Alternatively phrased, this contract is ambiguous and is interpreted in favor of the insured, Patricia Wasarovich. *Arco, supra* at 403; *Czopek, supra* at 595.

Interpreting the contract in favor of the insured as a result of the ambiguity means that the shooting incident is viewed from the subjective perspective of Patricia Wasarovich. The trial court, whose decision is overturned by this Court of Appeals majority, denied Michigan Basic summary disposition, holding that the shooting was an occurrence under the insurance policy because it should be interpreted from Patricia Wasarovich's standpoint as a result of the innocent coinsured doctrine from *Morgan v Cincinnati Ins Co,* 411 Mich 267, 276; 307 NW2d 53 (1981). The end result of this analysis is that the trial court's decision should be upheld, but the rationale for it rejected. The trial court erred in applying the innocent coinsured doctrine to this case. That doctrine operates to determine whether an *exclusionary clause* bars one of multiple coinsureds from making a claim of insurance because of an act of *fraud on the insurer. Id.* at 276. Thus, it is not applicable to the interpretation of the definition for the term "occurrence" under the insurance policy. Accordingly, the trial court's denial of Michigan Basic's summary disposition motion should be upheld because contract ambiguity results in the shooting being defined as an occurrence under the insurance policy.

## II. INTERPRETATION OF THE POLICE EXCLUSION

Given that the shooting death of August Feldt is

an occurrence to which Michigan Basic's duty to defend and indemnify applies, the second issue is if the "expected or intended by the insured" exclusionary clause in the policy subsequently eliminates Patricia Wasarovich's coverage. Michigan Basic's policy excluded coverage of personal liability and medical payments for third-party bodily injury if the bodily injury was "expected or intended by *the* insured." (Emphasis added.) As above, the pertinent question is which insured's perspective of the multiple insured's perspectives is used to determine if the bodily injury (death) was expected or intended.

When interpreting exclusions in a policy of insurance, clear, specific exclusions are enforced, but "exclusions to the general liability . . . are to be strictly construed against the insurer." *Czopek, supra* at 597. If ambiguity exists, the policy is enforced in favor of the insured. *Arco, supra* at 403; *Czopek, supra* at 595. Michigan courts have not interpreted the meaning of the phrase "the insured" in an exclusionary clause of a homeowner's policy covering multiple coinsureds. However, the Michigan Supreme Court interpreted the phrase "the insured" in the context of the exclusionary clause for fraud in the standard fire insurance policy, MCL 500.2832; MSA 24.12832. *Morgan, supra* at 276. While not factually on point, the analysis is persuasive.

*Morgan's* exclusionary clause read as follows:

> "This entire policy shall be void if, whether before or after a loss, the *insured* has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." MCL 500.2832; MSA 24.12832. [411 Mich 276. Emphasis added.]

The insurer argued to the *Morgan* Court that the exclusion voided the entire policy if *any* insured committed fraud. *Id.* The Supreme Court stated: "We believe . . . ['the insured'] is to be read as having application only to the insured who committed the fraud and makes claim under the policy." *Morgan* at 276.

Expanding this logic to the Michigan Basic clause that excludes coverage of personal liability and medical payments of others for bodily injury if the bodily injury was "expected or intended by *the* insured" in the case of multiple insureds, only the insured or insureds who intended or expected bodily injury *and* who applied for coverage would be excluded. Therefore, in the present case Patricia Wasarovich is not excluded from coverage in a summary disposition hearing because her intent or expectation with respect to August Feldt's bodily injury is a question of fact, as was recognized by the trial court.

Alternatively, if *Morgan's* analysis is not expanded into the realm of homeowner's insurance, Patricia Wasarovich is still not excluded under this clause. The word "the" is

> [a] demonstrative adjective used chiefly before a noun to individualize, specialize, or generalize its meaning, having a force thus distinguished from the indefinite distributive force of a , an, and from the abstract force of the unqualified noun. Thus, *the* man points to a particular man. . . Limiting a general term to the individual or class indicated by a succeeding element in the sentence. . . . [*Webster's New International Dictionary Unabridged, Second Edition.*]

Black's Law Dictionary, Revised Fourth Edition explains "the" as "an article which particularizes the subject spoken of." Black's goes on to say,

"The most unlettered persons understand that 'a' is indefinite, but 'the' refers to a certain object . . . 'The' house means only one house." Thus, the plain meaning in Michigan Basic's exclusionary clause for multiple insureds is that the clause examines the intentions or expectations of a single insured when judging exclusion from coverage. The question naturally follows in the case of multiple insureds with conflicting perspectives, *which perspective is adopted from which to judge exclusion*? Neither the insurance policy nor case law supplies an answer. Furthermore, in applying the exclusionary clause to the facts of this case, opposite, reasonable conclusions regarding exclusion are reached depending on whether Patricia Wasarovich's perspective or Joseph Wasarovich's perspective is adopted. This results in ambiguity. Ambiguity is construed in favor of the insured, Patricia Wasarovich. *Czopek, supra* at 595. Therefore, Ms. Wasarovich is not excluded from coverage at the summary disposition level. However, as a result of the factual question regarding whether Patricia Wasarovich expected or intended the bodily injury, the trial court erred in granting her summary disposition. This issue should be remanded to the trial court for findings of fact.