**KALAMAZOO ACQUISITIONS, L.L.C., Plaintiff,**

v.

**WESTFIELD INSURANCE COMPANY, INC., Defendant.**

**No. 1:02–CV–564.**

United States District Court, W.D. Michigan, Southern Division.

June 10, 2003.

Mark E. Kreter, Kreis, Enderle, Callander & Hudgins, Battle Creek, MI, for Plaintiff.

Mark G. Cooper, Cardelli, Hebert & Lanfear, PC, R. Carl Lanfear, Jr., Royal Oak, MI, for Defendant.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on the motion of Plaintiff Kalamazoo Acquisitions, L.L.C. ("Kalamazoo"), and on the motion of Defendant Westfield Insurance Company, Inc. ("Westfield"), for summary judgment. The motions have now been fully briefed and oral argument is unnecessary in light of the extensive briefing and the questions presented. For the reasons which follow, Plaintiff's motion will be granted and Defendant's motion will be denied pursuant to Federal Rule of Civil Procedure 56.

## FACTS

Plaintiff owned and managed a multi-tenant commercial building, known as the Kalamazoo City Centre Building, which was in the process of renovation. The purpose of this project was to renovate a number of connected buildings. As part of the project, the ceiling of the top floor had to be raised. Continental Construction Company ("Continental") was the contractor hired by Plaintiff to raise the ceiling. To accomplish this, the existing roof was left in place while the new roof was constructed. To support the new roof, holes were cut in the existing roof, through which 12 steel support columns were lowered into place.

On or about February 25, 2001, a heavy rainstorm caused water to enter the building through the holes. Although the contractors attempted to cover the holes with plastic visqueen, the material failed to divert the water towards the drainage system as intended, causing substantial damage to the interior of the building.

Plaintiff filed an insurance claim with Westfield pursuant to the Commercial Property Insurance contract between the parties, policy number CSP3506130 ("policy"). Plaintiff also made an insurance claim against Continental for damages and ultimately settled its claim with Continental pre-suit for $208,188.00.

Westfield denied Plaintiff's insurance claim and is seeking summary judgment on the grounds that the policy excluded coverage from the damage that occurred and that Kalamazoo breached the contract by reaching a settlement with Continental and releasing Continental from further claims without notifying Westfield. Kalamazoo is seeking summary judgment on the ground that the terms of the Addition-

al Coverage–Collapse section of the policy expressly covers the damage in question and thus, there is no genuine issue of material fact as the policy should be enforced as written. It is apparent from the briefing that neither party is disputing facts pertaining to the loss, but both are disputing coverage under the pertinent policy language.

### STANDARD FOR SUMMARY JUDGMENT

Review of a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The facts are to be considered in a light most favorable to the non-moving party, and "... all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (other citations omitted).

Once the movant satisfies his/her burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.,* 912 F.2d 151, 153–54 (6th Cir.1990). The non-moving party may not rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). It is

the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505.

### LEGAL ANALYSIS

Defendant requests summary judgment on the following grounds: (1) the policy excludes coverage for damage caused by rain unless the building or structure first sustains damage by a covered loss through which the rain enters; and (2) Kalamazoo waived Westfield's subrogation rights. However, the second ground upon which the Defendant seeks summary judgment has been conceded by the defense as stated in Plaintiff's Brief in Support of Motion for Summary Judgment and does not need to be considered.[1] Conversely, Plaintiff requests summary judgment on the ground that the terms of the Additional Coverage–Collapse portion of the policy expressly covers the damage occurring on or about February 25, 2001.

### INTERPRETING THE POLICY

Federal trial courts sitting in diversity apply the forum state's choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). When interpreting the terms of the policy, the Court must therefore apply principles developed by the courts of the state of Michigan. *Vandenbark v. Owens–Illinois Glass Co.,* 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1941).

 Insurance policies are held to be the same as any other contract, "[i]t is an

---

**1.** Plaintiff indicates that the issue is conceded in its Motion for Summary Judgment, at 3. Defendant's opposing brief does not challenge that the issue has been conceded.

agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431, 433–434 (1992). When interpreting an insurance contract, a court must construe clear and unambiguous provisions according to the plain and ordinary meaning of the terms used in the policy. *Trierweiler v. Frankenmuth Mut. Ins. Co.*, 216 Mich. App. 653, 550 N.W.2d 577, 579 (1996). Any clause in an insurance policy is valid as long as it is clear, unambiguous and does not contravene public policy. *Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440, 441 (1982). Where a policy is clear, "courts are bound by the specific language set forth in the agreement." *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 534 N.W.2d 502, 504 (1995). If an insurance contract sets forth definitions, the policy language must be interpreted according to those definitions. *Cavalier Mfg. Co. v. Employers Ins. of Wausau* (On Remand), 222 Mich. App. 89, 564 N.W.2d 68, 70–71 (1997). Finally, the burden of proof lies with the insured to show that the damage suffered was covered by the terms of the insurance policy. *Williams v. Detroit Fire & Marine Ins. Co.*, 280 Mich. 215, 273 N.W. 452, 453 (1937); *Fire Ins. Exch. v. Diehl*, 450 Mich. 678, 545 N.W.2d 602, 609 (1996).

### GENERAL COVERAGE

▪ The relevant portion of the policy reads:

> We will not pay for loss or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described in this section ... we will not pay for loss or damage to the interior of any building or structure, or to property in the building or structure, caused by or resulting from

rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless the building or structure first sustains damage by a covered cause of loss to its roof or walls through which the rain, snow, sleet, ice, sand, or dust enters. (Def.'s Brief for Summ. J., Ex. A, "LIMITATIONS" section of policy). The relevant question is whether the term "roof" covers the existing roof in its condition on or about February 25, 2001. Plaintiff contends that the existing roof and the plastic tents incorporate the "roof" as defined in the policy, while Defendant contends that the incomplete structure does not fall within the definition of a "roof" as stated in the policy. Because the term is susceptible to two or more reasonable interpretations, the language is ambiguous and therefore it is necessary to look elsewhere for interpretive guidance. *D'Avanzo v. Wise & Marsac*, 223 Mich.App. 314, 565 N.W.2d 915, 918 (1997). There is a lack of binding case law regarding this particular issue. Nonetheless, there is some case law that provides useful guidance.

Plaintiff relies on the holding in *Victory Peach Group, Inc. v. Greater New York Mut. Ins. Co.*, 310 N.J.Super. 82, 707 A.2d 1383, 1386–1387 (1998). In that case, the New Jersey Superior Court's Appellate Division reasoned that a roof which was under repair by building troughs on it to divert water was nonetheless a roof for purposes of a similar policy provision. The parties do not raise, and therefore this Court will not address, the issue of whether this is an "all-risk" or "named peril" policy as distinguished in *Victory Peach Group*, 707 A.2d at 1384–1385.

*Victory Peach Group, supra*, is distinguishable from this case in that the roof there was not in the process of replacement but only in the process of repair through the addition of troughs. It was thus a completed roof with some improve-

ments in progress. *Holesapple v. Aetna Cas. & Sur. Co.*, 2002 WL 749198, *7 (Cal. Ct.App. Apr. 29, 2002). However, the instant case is dealing with an uncompleted roof in the process of being replaced, not a permanent roof in the process of improvements. *Id.* at *7. Therefore, this was a risk outside the scope of the policy, as the policy clearly meant that the damage had to result from the damage to a permanent roof, not a roof still in the process of construction, in order to be covered. *Id.* at *2. This would conform with the policy that an insurance company should not be held liable for a risk it did not assume. *Kaczmarck v. L.A. Perriere*, 337 Mich. 500, 60 N.W.2d 327, 330 (1953); *Churchman*, 489 N.W.2d at 434; *Michigan Basic Prop. Ins. Ass'n v. Wasarovich*, 214 Mich.App. 319, 542 N.W.2d 367, 369 (1995); *Trierweiler*, 550 N.W.2d at 579.

While Plaintiff contends an argument can be made that the work on Plaintiff's roof was a repair rather than a construction because the drains on the existing roof were not in very good condition, the work goes far beyond any reasonable definition of repair. Comparatively, the repair work in *Victory Peach Group* was the addition of drainage systems, the length of the project being one or two days. Clearly, the instant case is more akin to new construction than repair, and the damage resulted from the new construction. Thus there is no genuine issue of fact regarding the general coverage of the insurance policy.

■ However, Plaintiff correctly asserts that it did purchase and is entitled to the coverage under the Additional Coverage–Collapse provision of the insurer's policy.

### ADDITIONAL COVERAGE–COLLAPSE

The policy includes the Additional Coverage–Collapse provision, the relevant portions of which include:

1) A direct physical loss or damage to Covered Property caused by collapse of a building or any part of a building insured if the collapse is caused by:

a) weight of rain that collects on a roof;

b) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

2) Direct physical loss or damage that does not involve the collapse of a building or any part of a building, but rather caused by the collapse of personal property if:

a) The personal property that collapses is inside a building; and

b) the collapse was caused by weight of rain that collects or use of defective material or methods of construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

(Def.'s Brief for Summ. J., Ex. A, "ADDITIONAL COVERAGE–COLLAPSE" section of the policy). Plaintiff filed its claim regarding the second provision of the Additional Coverage–Collapse section covering personal property; thus, there is no need to review whether the visqueen is to be considered "any part of a building" that would be insured. According to the terms of the policy, the burden is on the Plaintiff to show that: (1) the visqueen is personal property; (2) the visqueen collapsed; (3) the collapse occurred inside a building; and (4) the collapse was caused by one of the cause of loss listed in the policy. *Williams*, 273 N.W. at 453.

■ As previously stated, if an insurance contract sets forth definitions, the policy language must be interpreted ac-

cording to those definitions. *Cavalier,* 564 N.W.2d at 70. The Building and Personal Property Coverage Form includes as "Covered Property":

> Materials, equipment supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations, or repairs to the building or structure.

(Def.'s Brief for Summ. J., Ex. A, "Building and Personal Property Coverage Form", Section A(1)(a)(5)(b)). Further, in determining whether an object qualifies as a "fixture" and thus a part of the realty, or qualifies as "chattel/personal property," depends on the following three factors: (1) annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which the part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold. *Velmer v. Baraga Area Schs.,* 430 Mich. 385, 424 N.W.2d 770, 774 (1998). In addition, personal property is distinguished from real property even if it is attached to the realty if by its nature it is severable without injury to the realty. *Barron's Law Dictionary,* 351 (3d ed.1991).

In the instant case, the visqueen plastic tents may be considered temporary structures used for making additions to the building without any intent of making the article a permanent accession to the freehold; thus, it falls within the definition of personal property.

The next contention is regarding whether the visqueen "collapsed" as covered under the insurance policy. Defendant used a limited definition under *Webster's Dictionary* finding that collapse means "to cave in, fall in, or give way." Plaintiff cited *Webster's College Dictionary* in extending the definition to include "break down; fail utterly", a description which encompasses what occurred here. Additionally, a court has applied the expanded definition of "collapse", rather than limiting it to the narrow "inward" used by the Defendant. *Ramsden v. Auto–Owners Ins. Co.,* No. 215246, 2000 WL 33521860 (Mich.Ct.App. Mar. 21, 2000). Finally, collapse is also defined as "a sudden or unusual shrinking, settling, or falling of the building or any part thereof, or a loss of form, support, rigidity, or connection with other parts." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance,* § 148:54 (3d ed.1998). Therefore, Westfield's interpretation of "collapse", requiring the tents to fall in an "inward" manner is rejected, and it is found that the tents did in fact "collapse" as defined in the terms of the policy.

Third, the contention is whether the visqueen "tents" were located "inside" the building. Defendant contends that the tents were located between the old roof and the unfinished new roof, thus the tents were in an "open, unfinished area of construction." However, Plaintiff refers to the policy itself, which states that Westfield agrees to pay for the loss of or damage to "Covered Property", which then includes "additions under construction." (Def.'s Brief for Summ. J., Ex. A, "Building and Personal Property Coverage Form", Section A(1)(a)(5)(a)).

Incomplete structures may be insured as buildings, and the state of progress at the time of the insurance is no great aid in construing the policy unless the policy specifies a necessary stage of completion before the insurance attaches. Lee R. Russ & Thomas F. Segalla, *Couch on Insurance,* § 20:22 (3d ed.1998). The language of the policy does not specify a necessary stage of completion, rather it includes in its definition of the term "building": Building, meaning the building or structure described in the Declarations, including ... [a]dditions under construc-

tion, alterations and repairs to the building or structure. (Def.'s Brief for Summ. J., Ex. A, "Building and Personal Property Coverage Form", Section A(1)(a)(5)(a)).

Finally, the policy requires that the collapse be caused by one of the Covered Cause of Loss listed in the policy, which includes collapse caused by the "weight of rain" or "the use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation." (Def. ['s] Brief for Summ. J., Ex. A, "Causes of Loss–Special Form", Section D.1. and 2.)

 Under Michigan law, "[t]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in contemplation of the parties at the time the contract was made." *Lawrence v. Will Darrah & Assocs., Inc.,* 445 Mich. 1, 516 N.W.2d 43, 45 (1994). Application of this principle usually results in the plaintiff's recovery being limited to "the monetary value of the contract had the breaching party fully performed under it", or in other words, the claimant's expectation interest. *Networktwo Communications Group, Inc. v. Spring Valley Mktg. Group & Communityisp, Inc.,* 2003 WL 1119763, *7 (E.D.Mich.2003) (quoting *Lawrence,* 516 N.W.2d at 45). In order to collect any damages, a claimant must demonstrate, by a fair preponderance of the evidence, the actual or proximate amount of the loss sustained. *Networktwo,* 2003 WL 1119763 at *7.

 Plaintiff has shown that the tents were personal property which collapsed inside the building, and the collapse was caused by a cause of loss listed in the policy. Therefore the terms of the Additional Coverage–Collapse have been met. Thus, under the coverage provided in the terms of the policy, the Plaintiff is entitled

to the amount of $149,780.00, which represents the difference between the actual cash value and replacement cost of the loss caused by the water penetrating the building unless Defendant disputes the assessed value. Where the terms of an agreement are enforceable and the party is entitled to summary judgment, the undisputed portion of the amount due under the agreement may be granted without trial. *PDV Midwest Refining LLC v. Armada Oil & Gas Co., Inc.,* 116 F.Supp.2d 835, 845 (E.D.Mich.1999).

### CONCLUSION

For the reasons stated, a Judgment shall enter granting Plaintiff's Motion for Summary Judgment, awarding Plaintiff Judgment in the amount of $149,780.00, and denying Defendant's Motion for Summary Judgment. Parties may pursue attorneys' fees and costs pursuant to Fed. R.Civ.P. 54(d) by the filing of a post-judgment motion.