NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1022n.06

No. 13-1241

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 09, 2013
DEBORAH S. HUNT, Clerk

WINGZ AND THINGZ 1, dba Papa Chef, Inc.,

      Plaintiff-Appellant,

v.

PENN-STAR INSURANCE COMPANY,

      Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: COOK and STRANCH, Circuit Judges; CARR, District Judge[*]

COOK, Circuit Judge. Plaintiff-appellant Wingz and Thingz 1, a Michigan corporation run by Angela Suleiman, sued Penn-Star Insurance Company seeking coverage under its commercial-peril policy for fire damage to one of Suleiman's Detroit restaurants in 2008. Penn-Star voided the policy for fraud and moved for summary judgment, pointing to four allegedly false invoices submitted as proof of the property damage. With regard to two of the invoices,[1] deposition testimony from the companies allegedly selling the goods and services flatly denied plaintiff's

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]The other two invoices related to the restaurant's security system and neon signs. The district court found a genuine dispute regarding the neon-sign invoice, and declined to revisit the security-system invoice in its reconsideration opinion. We do likewise.

purchases. (R. 35-11, Shamoun Dep. at 9–10; R. 35-15, Deininger Dep. at 24–29.) When plaintiff responded with only unsigned and unsworn "affidavits"—one of which contradicted plaintiff's pre-suit examination-under-oath testimony—the district court granted summary judgment to Penn-Star, finding that plaintiff's fraud voided the policy. Though plaintiff attempted to cure its proffer with proper (though still undated) affidavits in a motion for reconsideration, significant differences between Suleiman's draft and final affidavit, and between the affidavit and her pre-suit testimony, led the court to deny the motion. Plaintiff appeals both orders, as well as the district court's implicit denial of its cross-motion for summary judgment. We affirm.

The district court properly rejected plaintiff's unsigned and unsworn "affidavits." *See, e.g.*, *Sfakianos v. Shelby Cnty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (affirming district court judgment discarding unsigned, unsworn affidavits and denying plaintiff's post-judgment attempt to cure these deficiencies). Admittedly, plaintiff's summary judgment briefing cites language from the signed affidavit, giving the impression that counsel mistakenly filed the draft affidavits. But Suleiman "cannot dispute that she failed to provide the district court with a proper affidavit prior to entry of judgment." *Sfakianos*, 481 F. App'x at 245. Without the defective affidavit, nothing remained to dispute Penn-Star's fraud showing regarding these two invoices—testimony from the putative vendor and service-provider refuting the claimed purchases. This evidentiary default alone justified summary judgment against the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (explaining that, to survive summary judgment, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial'"); Fed. R. Civ. P. 56(c)(1).

Furthermore, given the unexplained substantive differences between Suleiman's signed affidavit and both the unsigned affidavit and her prior statements under oath, the district court did not abuse its discretion in denying her motion for reconsideration. *See Sfakianos*, 481 F. App'x at 245–46; *Bonds v. Cox*, 20 F.3d 697, 703 (6th Cir. 1994) ("We do not believe that the standard of review for summary judgment . . . requires us to ignore a party's own conflicting statements in construing a fact to her best advantage."). For instance, despite pre-suit testimony claiming to have paid approximately $30,000 in cash for *finished* remodeling work, and a corroborating invoice for $35,650, Suleiman's signed affidavit concedes that she paid only $17,825 (half of the contract price) and that the fire prevented completion of the work. (*Compare* R. 35-8, Suleiman EUO Tr. at 153–54, *and* R. 35-10, Construction Invoice, *with* R. 45-1, Suleiman Aff. at 3.) Still, her affidavit admits submitting a nearly $36,000-invoice in support of her property-damage claim. Plaintiff offers no explanation for these divergent accounts.

As another example of revisionary history, Suleiman's affidavit disclaims knowledge about the origin of an $8,500 computer system she purchased from a Chicago restaurant, in stark contrast to her pre-suit testimony about finding the system on eBay and traveling to Chicago to test and retrieve it. (*Compare* R. 45-1, Suleiman Aff. at 3, *with* R. 35-14, Suleiman EUO Tr. at 72–73.) Again, she offers no explanation for these inconsistencies,[2] but now denies claiming this

---

[2]Though not mentioned in her appellate briefing, Suleiman's affidavit asserts that, at the time of her testimony, she "was confused and in distress from what had happened, raising a daughter on [her] own, and being pregnant and separated." It also faults the insurance company for asking her to document her losses, despite knowing that she lost most of her files in the fire. We reject

loss as part of the 2008 fire claim. (Ostensibly, she lost the computer equipment in a different fire at one of her restaurants in 2009.) Suffice to say the affidavit tells a very different story than the pre-suit testimony, despite Suleiman having an opportunity to correct it. The district court properly declined to use it as a basis for reconsidering its grant of summary judgment to Penn-Star. *See Sfakianos*, 481 F. App'x, at 245–46.

Even allowing the affidavit, Suleiman effectively *admits* presenting inflated losses to the insurance company. (*See* R. 45-1, Suleiman Aff. at 3 (conceding use of the nearly $36,000 invoice to support her insurance claim, but stating that she paid only half that price and that the fire prevented completion); *id.* at 4 (acknowledging that some of her statements to the insurance company "could have been material but there has been no fraud, nor misrepresentation").) Appellant argues that minor inconsistencies concerning specific losses should not negate the entire claim for the more than $300,000 damage caused by the fire. Yet, as the district court explained, the plain language of the policy "void[s]" coverage "in *any case of fraud* by [the insured] as it relates to this Coverage Part at any time," or if the insured "*at any time*, intentionally conceal[s] or misrepresent[s] a material fact concerning . . . [t]he Covered Property . . . or . . . [a] claim under this Coverage Part." The district court's construction of the contract comports with Michigan law. *See, e.g.*, *Home Owners Ins. Co. v. Selfridge*, No. 280122, 2008 WL 5273418, at *2 (Mich. Ct. App. Dec. 18, 2008) (per curiam); *Mich. Basic Prop. Ins. Ass'n v. Wasarovich*, 542 N.W.2d 367, 370 n.2

---

these vague and self-serving statements as irrelevant, as they fail to explain Suleiman's contrary assertions of loss.

(Mich. Ct. App. 1995) ("In cases where policy language voids the policy because of 'any' or 'an' insured's fraudulent conduct, no other insured, including innocent coinsureds, may recover under that policy."). Penn-Star's evidence of fraudulent invoices, corroborated by plaintiff's unexplained overstatement of construction costs, demonstrates that plaintiff intentionally misrepresented the restaurant's losses with regard to this insurance claim. Under Michigan law, the policy required nothing more to invalidate the coverage, and the district court properly granted summary judgment.

We affirm.