*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CIVITAS-IT, LLC,

      Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

      Defendant-Appellee.

UNPUBLISHED
January 12, 2023

No. 359731
Muskegon Circuit Court
LC No. 21-000915-CB

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Plaintiff, Civitas-IT, LLC, appeals by right the trial court's order granting summary disposition in favor of defendant Auto-Owners Insurance Company under MCR 2.116(C)(10). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In this insurance coverage dispute, plaintiff, a company that provides information technology services, brought suit against defendant for breach of contract and bad-faith denial of a claim under MCL 500.2006 after defendant denied plaintiff's insurance claim for computer equipment that was fraudulently procured by an imposter. In July 2020, plaintiff received an inquiry from an individual purporting to be from the purchasing department for Macomb County. The individual stated that Macomb County was interested in purchasing new computer equipment and asked plaintiff to facilitate the transaction. Plaintiff did so only to later discover that Macomb County never ordered the equipment. Plaintiff submitted a claim for the loss to defendant for $165,195, which defendant denied.

In the trial court, defendant moved for summary disposition under MCR 2.116(C)(10), asserting that the insurance policy did not cover plaintiff's loss because the policy explicitly excluded any loss that was the result of "[v]oluntary parting with any property by you to anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense." Plaintiff contended, however, that certain endorsements to the policy amended that provision and afforded coverage for the loss. As relevant here, plaintiff argued that the loss was covered by the "accounts receivable" endorsement, which stated defendant would

-1-

cover "[a]ll amounts your customers owe you that you cannot collect . . . ." In response, defendant asserted that the imposter that obtained the computer equipment was not a "customer" and, therefore, the endorsement did not apply.

The trial court concluded that the policy did not cover the loss because the account was not an "account receivable." Thus, the court granted defendant's motion for summary disposition. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 6; 972 NW2d 860 (2021). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is reviewed "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This Court also reviews de novo the proper interpretation of a policy of insurance. *Webb v Progressive Marathon Ins C*o, 335 Mich App 503, 507; 967 NW2d 841 (2021). The question on appeal concerns whether the insurance policy's terms were ambiguous, and "the existence of an ambiguity in an insurance policy is a question of law" reviewed de novo. *Farm Bureau Mut Ins Co v Buckallew*, 246 Mich App 607, 612; 633 NW2d 473 (2001).

## III. DISCUSSION

An insurance policy is interpreted by this Court in the same manner as any contract. *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008) ("Because insurance policies are contractual agreements, they are subject to the same rules of contract interpretation that apply to contracts in general."). "An insurance policy is read as a whole, and meaning should be attributed to all terms," *id*., which are "given their 'commonly used meaning' if not defined in the policy." *Matouk v Mich Municipal League Liability & Prop Pool*, 320 Mich App 402, 409; 907 NW2d 853 (2017), quoting *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112; 595 NW2d 832 (1999). "Unambiguous insurance policy language must be enforced as written." *Matouk*, 320 Mich App at 409.

Plaintiff first argues that the trial court erred when it granted defendant's motion because the coverage dispute between the parties centered on whether the imposter was a "customer," while the trial court concluded that plaintiff's account with the imposter was not an account receivable. Plaintiff contends that the term "accounts receivable" is not a significant term in the insurance policy, and the term misled the trial court into granting the motion. While we agree with plaintiff that the trial court's conclusion was erroneous, we nevertheless affirm the court's order because the court reached the correct result. See *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005) ("[I]t is axiomatic that this Court will not reverse a trial court's decision if the correct result is reached for the wrong reason.").

In the accounts receivable endorsement, defendant agreed to cover "[a]ll amounts your customers owe you that you cannot collect" and "[o]ther expenses you reasonably incur to re-establish your records which result from direct physical loss of or damage to your records of accounts receivable." Thus, contrary to plaintiff's argument, the term "accounts receivable" is more than just a label on the endorsement, it is a term itself in the language of the policy. For its part, the trial court defined the term as involving "a bill/statement, repeated billings followed by informal and friendly inquiries, and then stronger language and efforts." The term is undefined in the policy; thus, we must give it its commonly used meaning. See *Matouk*, 320 Mich App at 409. *Black's Law Dictionary* (11th ed) defines the term as "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services." Under either the trial court's definition or the dictionary definition, the account at issue qualified as an account receivable.

Under the trial court's formulation, the account was an account receivable because plaintiff did record a statement for the transaction in its accounts, and made efforts to collect the money, at first with friendly inquiries and ultimately culminating in involving law enforcement and filing this lawsuit. Thus, under the trial court's definition, there was a statement, followed by stronger and stronger efforts to collect. Similarly, under the dictionary definition, the account qualified as an account receivable because it was an account that reflected a debt owed by a debtor—the imposter.[1] But even though the account itself was an account receivable, it was not an account receivable with a *customer*.

The question of whether the imposter was a "customer" under the policy requires us to address two questions. The first is whether the term "customer" is ambiguous, such that the ambiguity should be construed against defendant. The second question, assuming the term is not ambiguous, is whether the term as commonly understood covers an imposter.

A contract is ambiguous and will be construed against the drafter when "a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances . . . ." *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 566-567; 596 NW2d 915 (1999) (quotation marks and citation omitted). "Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear." *Id*. at 567 (quotation marks and citation omitted). In addition, "a policy is not rendered ambiguous simply because it omits the definition of a term." *Mich Basic Prop Ins Ass'n v Wasarovich*, 214 Mich App 319, 322; 542 NW2d 367 (1995).

The insurance policy is not rendered ambiguous simply because the term "customer" is undefined. See *id*. The relevant question is whether the policy, when read fairly and as a whole, permits differing interpretations as to whether coverage is afforded. See *Nikkel*, 460 Mich at 566-567. The policy, in general, does not cover losses that are the result of fraud. Specifically, in the exclusions for covered losses, the parties agreed that defendant would not be responsible to pay for losses that were the result of "[v]oluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device, or false pretense." Plaintiff contends it negotiated around this provision by incorporating the

---

[1] A debtor is defined as "[s]omeone who owes an obligation to another, esp. an obligation to pay money . . . ." *Black's Law Dictionary* (11th ed).

accounts receivable endorsement, essentially arguing that because a customer can cause plaintiff to have a loss on an account by failing to pay, and because an imposter can be a customer, the imposter, by defrauding plaintiff, can cause the loss which must be covered by defendant. This is not a fair reading of the entire policy because an imposter is not a customer. See *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 163; 534 NW2d 502 (1995) (stating that the "policy of interpreting ambiguities in a contract against insurers" is not furthered by "allowing insureds to employ a sophisticated version of a term to create a claim of ambiguity").

The term "customer" is defined in *Black's Law Dictionary* (11th ed) as "[a] buyer or purchaser of goods or services; esp., the frequent or occasional patron of a business establishment." The relevant terms in this definition are "buyer" and "purchaser," both of which imply the exchange of money from the customer for goods or services from the business. In this case, not only was there not an exchange of money, it is clear that there never was an intent by the imposter to ever pay for the computer equipment. Thus, under the dictionary definition, the term "customer" does not encompass the imposter that defrauded plaintiff in this case.

Plaintiff urges the Court to follow *Security Ins Co of Hartford v Investors Diversified, Ltd, Inc*, 407 So 2d 314 (Fla App, 1981),[2] in which the Florida appellate court concluded that the defendant-insurer could not rely on a larceny-by-trick exclusion provision in the policy to deny coverage because the language of the policy was ambiguous. However, the case is unpersuasive as it turned on the legal question—one of first impression in Florida—of whether the insured could "entrust" property to a thief. *Security Ins Co of Hartford*, 407 So 2d at 316. The court recognized there was a split of authority on the question and concluded "there can be no valid entrustment of property to another where the transfer of possession is acquired by means of some fraudulent device." *Id.* Thus, because the policy at issue required the plaintiff to "entrust" money for the exclusion to apply, the plaintiff's loss was covered under the policy. *Id.* at 316-317.

This case, in contrast, turns on a different legal question than that presented in *Security Ins Co of Hartford*—namely, whether an imposter qualifies as a "customer" under the policy. As explained above, we conclude that it does not. Thus, plaintiff's reliance on *Security Ins Co of Hartford* is unconvincing as it is not relevant to the legal question presented here. Defendant issued the policy to plaintiff under which the parties agreed that defendant would not cover losses that resulted from "any fraudulent scheme, trick, device, or false pretense." The accounts receivable endorsement did nothing to change that agreement between the parties.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica

---

[2] "Cases from foreign jurisdictions are not binding, but can be persuasive." *Holton v Ward*, 303 Mich App 718, 727 n 11; 847 NW2d 1 (2014), lv den 497 Mich 980 (2015).